WESTFIELD COMPANIES,
Appellant–Plaintiff,

v.

Ralph KNAPP, Joanne Knapp, Cecil
Ponder, Thelma Ponder and Scott
Spangle, Appellees–Defendants.

No. 56A03–0304–CV–141.

Court of Appeals of Indiana.

March 23, 2004.

Jerry E. Huelat, Kelly A. Baer, Huelat & Gardner, LLC, Michigan City, IN, Attorneys for Appellant.

Earl D. Walton, Blaney Casey & Walton, DeMotte, IN, Attorney for Ralph and Joanne Knapp.

Ned J. Tonner, Law Office of Ned J. Tonner, Rensselaer, IN, Joseph E. Morrison, Law Office of Joseph E. Morrison, Roselawn, IN, Gregory J. Tonner, Spangler, Jennings & Dougherty, P.C., Merrillville, IN, Attorneys for Scott Spangle.

## OPINION

MAY, Judge.

The Westfield Companies appeal summary judgment in favor of Ralph and Joanne Knapp and Scott Spangle (collectively, "the insureds").

Westfield raises three issues on appeal, which we consolidate and restate as:

1. Whether a pickup truck used for loading melons on a farm is "mobile equipment" and therefore excluded from coverage by an insurance policy's motor vehicle exclusion; and

2. Whether the trial court properly determined Spangle was on the Knapp property with permission and therefore was entitled to recover under the medical payment provision of the policy.

We affirm in part, reverse in part, and remand.

## FACTS

The Knapps and Cecil and Thelma Ponder[1] have farms in Newton County. Thelma's son, Scott Spangle, lived with the Ponders at the time of the accident that gives rise to this insurance coverage dispute. The Knapps and the Ponders both operated farm stands where they sold produce they raised. In 1999, the Knapps and the Ponders decided to combine their farm stand operations. Both farmers would grow produce on their own farms and sell it at the joint farm stand. The Ponders would also plant and harvest crops on land the Knapps owned and prepared for planting. Ralph Knapp decided to add liability insurance coverage for the farm stand operation and he added that coverage to his farm package policy.

The Knapps and Ponders decided to grow watermelons and cantaloupes on the Knapp property. Various members of the Ponder family, including Spangle, helped with the planting, weeding, and harvesting of the melons. On August 14, 1999, the Ponders and Spangle drove the Ponders' pickup truck to the Knapp property to pick melons for sale that day. Thelma drove the truck onto a farm lane that went through the melon patch, and Cecil and Spangle picked melons and loaded them into the back of the truck. As Thelma reached the end of the farm lane she attempted to turn the truck around and the truck slid off the edge of the lane and dropped into a shallow furrow. Thelma revved the engine to avoid becoming stuck in the mud. Spangle was in front of the truck and was hit when it unexpectedly lurched forward.

Westfield sought a declaratory judgment that its policy did not provide liability or medical payment coverage for Spangle's injuries. Spangle brought a counterclaim for declaratory judgment and damages. After discovery, both Spangle and Westfield moved for summary judgment. At a hearing on January 22, 2003, the court issued an oral ruling that Westfield had a duty to defend[2] under the policy it issued

---

1. The Ponders are listed on both briefs as parties to this appeal, but a default judgment was apparently entered against them.

2. The court stated in part:

> I'm going to grant declaratory judgment in favor of the defendants, and find there is coverage due and owing both from the Med Pay and the—on the issue of liability. Or, should I say a duty to defend ... I'm deny-

to the Knapps. On January 24, it entered a final appealable order stating in part that Spangle "is entitled to declaratory judgment insofar as [Westfield] has a duty to defend under coverage of the policy issued by [Westfield] to [Knapp]." (Appellant's App. at 143.) It authorized Spangle to submit a proposed order.

Spangle submitted a proposed "Order on Cross–Motions for Summary Judgment" on February 5. (*Id.* at 10.) The trial court approved the order, signed it, and entered it *nunc pro tunc* as of January 24 to conform with its earlier final appealable order. The order stated the Ponder truck was "mobile equipment" and thus not within the policy's "motor vehicle" exclusion. The court further determined Spangle was on the Knapp property with permission and was therefore covered under the Medical payments provision of the policy. It therefore granted Spangle's summary judgment motion on the coverage issues but denied summary judgment on the question of bad faith.

On January 30, 2003, Westfield wrote the trial judge asking to be heard on the issue of bad faith. On February 3, Westfield filed a second motion for summary judgment in which it asserted for the first time that Spangle was not covered by the Westfield policy because he was acting in furtherance of an "undisclosed partner-

ship." The judge set a hearing on those issues for March 5. After hearing argument, the trial court entered an order that reaffirmed its prior rulings but re-dated the prior order from January 24 to February 5. The court noted it had entertained argument on Westfield's second motion for summary judgment and denied the motion.[3]

## DISCUSSION AND DECISION

### 1. Standard of Review

On review of a summary judgment, we apply the same standard as the trial court. Summary judgment is appropriate where the evidence designated to the trial court shows both that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 692 (Ind.Ct.App.2002). We will affirm a summary judgment if it is sustainable under any theory or basis found in the evidence designated to the trial court. *Id.* When material facts are not in dispute, our review is limited to the determination whether the trial court correctly applied the law to the undisputed facts. *Id.*

When the material facts are undisputed and the question presented is a pure question of law, we review the matter *de novo.* *Id.* The interpretation of a con-

---

ing summary judgment on the issue of—of bad faith.
(Appellant's App. at 20–21.)

**3.** Westfield presents as an issue on appeal that the trial court erroneously denied Westfield's second motion for summary judgment asserting coverage was excluded because Spangle was injured while acting in furtherance of an undisclosed partnership or joint venture. Westfield argues in its reply brief that the undisclosed partnership issue "was put at issue before the court within plaintiff's first motion for summary judgment." (Appellant's Reply Br. at 11.) In support, Westfield directs us to this statement in the "Facts and

Procedural History" section of its memorandum in support of its first motion for summary judgment: "the Knapp/Ponder business venture was not listed as an insured nor did it fit into the definition of an 'insured' under the policy provisions." (Appellant's App. at 52.) There appears to be no other mention, in the argument section or elsewhere in the memorandum, of the partnership, nor is there any explanation of its significance.

We need not address the "undisclosed partnership" question as we find coverage was excluded by the policy's motor vehicle exclusion.

tract is a matter of law, so cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment. *Id.* Provisions of insurance contracts are subject to the same rules of construction as other contracts; we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. *Id.* In accomplishing that goal we must construe the insurance policy as a whole, rather than considering individual words, phrases, or paragraphs. *Id.* at 692–93. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* An unambiguous exclusionary clause is ordinarily entitled to enforcement. *Id.* at 694.

 We must accept an interpretation of the contract language that harmonizes the provisions rather than one that supports a conflicting version of the provisions. *Id.* at 693. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Id.* If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous.[4] *Id.* One way of determining whether reasonable persons might differ is to see if the policy language is susceptible to more than one interpretation. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind.1998).

 Terms in a contract are given their usual and common meaning unless, from the contract, it can be determined

some other meaning was intended. *Am. Family Ins. Group v. Houin*, 777 N.E.2d 757, 761 (Ind.Ct.App.2002), *trans. dismissed.* Unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect. *Miller v. Geels*, 643 N.E.2d 922, 928 (Ind.Ct.App.1994), *trans. denied.*

### 2. The Motor Vehicle Exclusion

 The grant of summary judgment for the insureds under the Bodily Injury and Property Damage Liability provision of the policy was improper because Spangle's activities were excluded from coverage by the motor vehicle exclusion. The Westfield policy explicitly excludes coverage for bodily injury arising out of "maintenance, use, operation or 'loading or unloading' of any 'motor vehicle' ... by any 'insured' or any other person[.]" (Appellant's App. at 320.) The policy defines a "motor vehicle" as "A motorized land vehicle, trailer or semi-trailer: (a) Designed for travel on public roads; or (b) Used on public roads; unless it qualifies as 'mobile equipment[.]'" (*Id.* at 326.) The policy states immediately thereafter that "'motor vehicle' does not mean 'Mobile equipment[.]'" (*Id.*) The policy therefore excludes from coverage an injury arising out of certain activities involving a "motor vehicle" but not a "vehicle" that is within the definition of "mobile equipment" at the time of the accident.[5]

---

4. Spangle asserts that ambiguous provisions in insurance policies are construed in favor of the insured, especially when those provisions limit or exclude coverage. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind.1998). This is true when a dispute involves an insurer and its insured, but when a case involves a dispute between a third party and an insurer, we determine the general intent of the contract from a neutral stance.

*Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 452 (Ind.Ct.App.2000).

5. Westfield asserts "the express terms of the policy state that a motor vehicle cannot be mobile equipment—the terms are mutually exclusive." (Appellant's Br. at 17.) However, the policy terms elsewhere explicitly indicate a motor vehicle may qualify as "mobile equipment." (*See* Appellant's App. at 326)

Spangle does not explicitly argue the truck is not a "motor vehicle" but rather asserts the policy explicitly contemplates that a vehicle can, depending on the circumstances of its use, be either a "motor vehicle" or "mobile equipment." We find the truck was not being used as "mobile equipment" at the time of the accident.

Section (b.) of the policy definition of "mobile equipment" includes "vehicles while used on premises you own or rent," (*id.*), and section (f.) includes vehicles not covered elsewhere in the definition "that are maintained primarily for purposes other than the transportation of persons or cargo." (*Id.*) Spangle notes the policy never expressly defines "vehicle." Therefore, he urges, it should be given its plain and ordinary meaning. The only way to harmonize the various provisions of the policy, he asserts, is to find that when a pickup truck is being driven on public roads, it is a "motor vehicle" and excluded from coverage; when it is used on the insured's farm, it is "mobile equipment" and coverage is not excluded. Spangle notes the way a vehicle is used at a particular time may determine whether and what kind of coverage applies. *See, e.g., Meridian Mut. Ins. Co.*, 698 N.E.2d at 772 (addressing a shared-expense car-pool exception to an automobile policy that "covers carpools but not driving for hire").

■ Westfield asserts .the Ponder truck cannot be a "vehicle" as contemplated in section (b.), relying on the principle of *ejusdem generis.*[6] Many of the subparts of the policy definition of "mobile equipment" refer to "a class of equipment and vehicles designed or used primarily off public roadways, and not primarily designed and used for transportation of persons on public roads" (Appellant's Br. at 18), *i.e.*, bulldozers, forklifts, tractors, farm equipment, vehicles that travel on crawler treads, and vehicles on which are mounted cranes, shovels, or road construction equipment. Section (e.) of the definition of "mobile equipment" encompasses vehicles not described in any other part of the definition that

> are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
>
> (1) Air compressor, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
>
> (2) Cherry pickers and similar devices used to raise or lower workers[.]

(defining a "motor vehicle" as a motorized land vehicle designed for travel on public roads or used on public roads "unless it qualifies as 'mobile equipment.' ") The policy therefore apparently contemplates that "motor vehicles" might sometimes be used as "mobile equipment."

**6.** "The 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black's Law Dictionary 517 (6th ed.1990).

Westfield offers a number of decisions where a truck was found not to be "mobile equipment." However, those decisions involve policy definitions significantly different from those in the case before us. *E.g., Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 378 (8th Cir.1999) ("mobile equipment" defined as vehicles "maintained for use *solely on or next to* premises ·you own or rent") (emphasis supplied), *reh'g denied; Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 920 (9th Cir. 1979) ("mobile equipment" defined as not subject to motor vehicle regulation).

(App. at 326.) Section (f.) goes on to explicitly exclude as "mobile equipment" and include as "motor vehicles" self-propelled vehicles with certain types of "permanently attached equipment" such as cherry pickers, air compressors, pumps, generators, and equipment used primarily for road maintenance and street cleaning. (*Id.*)

The designated evidence indicated the Ponder truck was registered, insured, designed for and licensed for use on public roads and was so used by the Ponders. It is apparent from a reading of the definition of all provisions of the "mobile equipment" definition that an unmodified passenger vehicle, even if used on occasion on the insured's premises, is a "motor vehicle" and not "mobile equipment." The trial court's summary judgment for the insureds on that issue was therefore error.

### 3. The Medical Payment Coverage

■ The trial court properly found Spangle met "all the prerequisites for coverage under the Medical Payments provision" [7] of the policy (*Id.* at 15). The Medical Payments provision states in pertinent part that the medical payment coverage for bodily injury resulting from an accident "applies only ... [t]o a person (other than an 'insured') who is on the 'insured location' with the permission of an 'insured[.]'" (*Id.* at 323.) [8]

■ The trial court found Spangle was on the Knapp property "with the permission of Ralph Knapp, to plant, weed and harvest melons[.]" (*Id.* at 11.) [9] Westfield notes evidence that no one asked Knapp's permission *"that day,"* and Knapp was not even aware Spangle was on the property *"that day."* (Appellant's Br. at 23) (emphasis supplied). The trial court, Westfield asserts, therefore misstated the record; Spangle was not on the property with permission, or at the very least there is a genuine issue of material fact as to that question.[10]

---

7. Westfield flatly asserts, without explanation or citation to the record, "there was no third party medical coverage under the policy. As there was no coverage under the Medical Payments provisions of the policy, defendant Spangle does not have standing to make a direct claim against Westfield." (Appellant's Br. at 22.) This appears to be incorrect. The Medical Payments provision in the policy explicitly applies *only* to persons "other than an insured[.]" (Appellant's App. at 323.)

8. An endorsement to the policy also provides medical payments to "farm employees" injured as a result of accidents that occur in the course of the farm employment. (Appellant's App. at 331.) Westfield argues at some length that Spangle was a "volunteer" and not a "farm employee." Spangle relies only on the coverage for persons on the insured premises with the permission of the insured; he characterizes his status as an employee or volunteer as "irrelevant." (Appellees' Br. at 26.) Accordingly, we do not address Spangle's status as an "employee."

9. The trial court found "Westfield concedes the issue of permission of [Knapp] for Spangle to be on the Knapp property at the time in question." (Appellant's App. at 15.) Westfield asserts it did not concede that issue, but does not direct us to evidence in the record to that effect except to note again evidence the Knapps did not know Spangle was on the property "that day." (Appellant's Reply Br. at 7.)

10. The insureds further note Westfield does not argue in its motion for summary judgment or its brief in support that Spangle was on the property without permission. Therefore, they assert, Westfield waived that issue for appeal. *See Poulard v. Lauth,* 793 N.E.2d 1120, 1123 (Ind.Ct.App.2003) (issues not raised before the trial court on a summary judgment motion cannot be argued for the first time on appeal and are waived, and matters not designated as genuine issues of material fact cannot be relied upon on appeal). Westfield asserts in its reply brief "[t]he facts and designations presented to the

Knapp knew Spangle and other people sometimes helped the Ponders harvest produce on the Knapp property and Ponder had "implied" permission to enter the Knapp property at any time. (Appellant's App. at 423.) Westfield offers no authority in support of its apparent premise that for purposes of insurance coverage a landowner must grant "permission" for each visit a third party pays to its property, and we decline to so hold.

■ "Permission" for purposes of insurance coverage may be "ongoing" or "implied." In *Am. Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 785–86 (Ind.Ct. App.2002), *reh'g denied, trans. denied* 783 N.E.2d 697 (Ind.2002), we cited with approval decisions from other jurisdictions holding prolonged, frequent, and habitual use with knowledge and acquiescence of the owner amount to authorization and "permission" within the policy; there may be an "implied permission" where a presumption is raised from a course of conduct or relationship between the parties in which mutual acquiescence or lack of objection signifies consent.

In *Hall,* the driver "had ready access to the car keys and there was no express statement or definite act by [the owner] that restricted [the driver's] use or withdrawal of permission for him to operate the vehicle." *Id.* at 786. The driver frequently drove the vehicle, often with the owner's specific knowledge. We found it "apparent" that the owner put it in the driver's power to drive the vehicle essentially at will. *Id.* We concluded the evidence of prolonged, frequent and habitual use of the vehicle without any objection by the owner indicated the owner impliedly gave the driver permission to use the vehicle. *Id.* Thus, the trial court properly determined there was no genuine issue of material fact as to this issue. *Id.* The same reasoning leads us to conclude Spangle had permission to be on the Knapp property when he was injured.

## CONCLUSION

The trial court correctly determined Spangle had permission to be on the Knapp property when he was injured and we therefore affirm the entry of summary judgment for Spangle on the issue of coverage under the medical payments provision of the Westfield policy. However, entry of summary judgment for the insureds under the bodily injury liability provisions of the policy was error because the accident arose out of use of a "motor vehicle." We therefore reverse on that issue and direct the trial court to enter summary judgment for Westfield.

Affirmed in part, reversed in part, and remanded.

DARDEN, J., and BARNES, J., concur.

Trial Court clearly demonstrate that permission was at issue." (Appellant's Reply Br. at 6–7.) In support, it directs us to statements in the "Facts and Procedural History" section of its memorandum in support of summary judgment that at the time of the accident Spangle was on the Knapp property "unbeknownst" to Knapp (Appellant's App. at 50) and that the Knapps and Ponders had not discussed hiring Spangle to pick melons. We decline to find Westfield's statement in the "Facts and Procedural History" section of its memorandum in support of its motion for summary judgment had the effect of bringing that matter to the trial court's attention so that the trial court could resolve it. Westfield accordingly has waived that allegation of error. Notwithstanding the waiver, we find, as explained below, that Spangle had permission to be on the property.