**HEMOCLEANSE, INC., and Ash Access Technology, Inc., f/k/a Ash Medical Systems, Inc., Appellants/Cross–Appellees–Plaintiffs,**

v.

**PHILADELPHIA INDEMNITY INSURANCE COMPANY, Appellee/Cross–Appellant–Defendant.**

No. 79A05–0503–CV–141.

Court of Appeals of Indiana.

July 26, 2005.

Rod A. Ray, Truitt & Ray, Lafayette, for Appellants.

Kenneth J. Catanzarite, Catanzarite Law Corporation, Anaheim, CA, Pro Hac Vice.

Thomas E. Satrom, Julia Blackwell Gelinas, Locke Reynolds LLP, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellants/cross-appellees-plaintiffs HemoCleanse, Inc., and Ash Access Technology, Inc. (collectively, "HemoCleanse"), appeal the trial court's order granting appellee-cross-appellant-defendant Philadelphia Indemnity Insurance Company's (Philadelphia) motion to compel arbitration of HemoCleanse's breach of contract claim against Philadelphia. Specifically, HemoCleanse argues that the trial court erred in granting Philadelphia's motion because the parties' insurance contract does not re-

quire arbitration of this claim and because Philadelphia waived any right to compel arbitration by failing to seek a declaratory judgment at the time it denied coverage.

Philadelphia cross-appeals the trial court's denial of its request to compel arbitration of HemoCleanse's claim for breach of the covenant of good faith and fair dealing. In particular, it contends that HemoCleanse's two claims are so inextricably intertwined that determining whether Philadelphia breached the duty of good faith and fair dealing depends upon whether it breached its contract with HemoCleanse by wrongfully denying coverage. Accordingly, Philadelphia argues that because the breach of contract claim was properly submitted to arbitration, the good faith and fair dealing claim must similarly be arbitrated.

Finding that the breach of contract claim was properly submitted to arbitration and that the claim for breach of the duty of good faith and fair dealing was properly stayed pending the results of the arbitration, we affirm the judgment of the trial court in all respects.

## FACTS

On May 18, 2001, Philadelphia issued to HemoCleanse an insurance policy (Policy) that provided, among other things, directors' and officers' liability insurance. The parties renewed the Policy for another year on May 18, 2002. Upon renewal, an additional provision, titled "Related Party Exclusion," was added to the policy: "[Philadelphia] shall not be liable to make any payments for 'Loss' or 'Defense Costs' in connection with any 'Claim' brought by or on behalf of, arising out of, directly or indirectly resulting from the following related party(s): HemoTherapies, Inc." Appellant's App. p. 63.

In October 2002, HemoCleanse sued three individuals in California Superior Court, alleging fraud and misrepresentation with regard to securities HemoCleanse had received in exchange for licensing certain technology to HemoTherapies, Inc. In response to this lawsuit, the defendants filed a cross-claim against HemoCleanse and its officers and directors. HemoCleanse tendered defense of this action to Philadelphia and Philadelphia declined HemoCleanse's request based on the Related Party Exclusion. Eventually, the parties to this lawsuit reached a settlement.

HemoCleanse later filed suit against Philadelphia in California, alleging breach of contract and breach of the covenant of good faith and fair dealing. The lawsuit was eventually dismissed on grounds of forum non conveniens, and on July 15, 2004, HemoCleanse refiled the complaint in Tippecanoe County Superior Court. Philadelphia moved to stay the complaint and to compel arbitration of HemoCleanse's claims. After the parties submitted briefs on the matter, on February 18, 2005, the trial court entered its order compelling HemoCleanse to arbitrate its breach of contract claim, denying Philadelphia's motion to compel arbitration of the claim for breach of the covenant of good faith and fair dealing, and ordering that the latter claim be stayed pending the results of the arbitration. HemoCleanse now appeals, and Philadelphia cross-appeals.

## DISCUSSION AND DECISION

### I. HemoCleanse's Claims on Appeal

HemoCleanse contends that the trial court erred in compelling it to arbitrate its breach of contract claim. Specifically, HemoCleanse argues that the Policy does not mandate arbitration in this case and that Philadelphia waived any right it may have

to compel arbitration.[1]

As we consider these arguments, we note that we apply a de novo standard of review to a trial court's ruling on a motion to compel arbitration. *Polinsky v. Violi*, 803 N.E.2d 684, 687 (Ind.Ct.App. 2004). We further note Indiana's strong policy in favor of enforcing arbitration agreements. *Homes by Pate, Inc. v. De-Haan*, 713 N.E.2d 303, 306 (Ind.Ct.App. 1999).

Insurance contracts are subject to the same rules of construction as other contracts: we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1274 (Ind.Ct. App.2004), *trans. denied*. In accomplishing that goal, we must construe the insurance policy as a whole. *Id.* If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* Where a policy's language is ambiguous, we must strictly construe it against the insurer. *Barclay v. State Auto Ins. Cos.*, 816 N.E.2d 973, 979 n. 3 (Ind.Ct. App.2004), *trans. denied*.

We must accept an interpretation of the contract language that harmonizes the provisions rather than one that supports a conflicting version of the provisions. *Westfield*, 804 N.E.2d at 1274. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Id.* If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. *Id.* Terms in a contract are given their usual and common meaning unless, from the contract, it can be determined that some other meaning was intended. *Id.*

### A. Policy Interpretation

HemoCleanse contends that the trial court erred in compelling it to submit its breach of contract claim to arbitration pursuant to the Policy. Specifically, it argues that the dispute at issue is not a "coverage dispute" within the meaning of the Policy language. Indeed, HemoCleanse emphasizes that it only requested that Philadelphia defend—not indemnify—it from the lawsuit in question. In effect, HemoCleanse asserts that a dispute as to defense costs is not a "coverage dispute" and, accordingly, is not subject to the Policy's arbitration provision.

The Policy provides that "[a]ny coverage dispute which cannot be resolved through negotiations between any insured and the insurer shall be submitted to binding arbitration." Appellant's App. p. 22. The Policy does not define the phrase "coverage dispute," but it does provide some context for the term. Initially, the Policy provides that "the insurer agrees to provide *coverage* as shown in the Declarations and described as follows . . . ." *Id.* at 13 (emphasis added). Part 1 of the Policy then requires that "[t]he Insurer shall pay on behalf of the Insured, *Loss* from any Claim first made during the Policy Period . . . ." *Id.* (emphasis added). "Loss" is defined as

---

1. We note that HemoCleanse's primary attorney is located in California and is admitted to practice in Indiana pro hac vice. We understand that California likely has different rules for the format of appellate briefs, but we caution counsel that it is always prudent to familiarize oneself with the appellate rules of the jurisdiction in which a brief is being submitted.

We also note that HemoCleanse dedicates an inordinate amount of time and space in its brief to whether Philadelphia properly denied coverage and whether it breached the covenant of good faith and fair dealing. Those issues are simply not before us in this case; rather, the *only* matter we must determine is whether either one of HemoCleanse's claims should be arbitrated according to the Policy.

"Defense Costs and any money the Insured is legally obligated to pay as damages or in settlement." *Id.*

The Policy provides, in other words, that Philadelphia agrees to provide coverage to HemoCleanse, said coverage includes "loss" from any claim made by HemoCleanse, and "loss" includes defense costs. Upon reviewing the Policy language, therefore, it is apparent to us that a dispute over defense costs is well within the meaning of the phrase "coverage dispute." That HemoCleanse requested that Philadelphia defend rather than indemnify it is of no moment inasmuch as a dispute over defense costs is plainly subject to the Policy's arbitration provision. As aptly put by Philadelphia:

> The simple fact is that some Defense Costs are covered under the Policy, and some Defense Costs are excluded from coverage under the policy. HemoCleanse contends that the Defense Costs incurred in the HemoTherapies counterclaim were covered; Philadelphia contends that those Defense Costs were excluded. This has given rise to a dispute as to what coverage the Policy provides. No one can seriously claim that this does not constitute a "coverage dispute" which is subject to the binding arbitration provision of the policy.

Appellee's Br. p. 6–7. We agree.

### B. *Waiver*

 HemoCleanse next argues that Philadelphia waived its right to seek arbitration of this claim. In particular, HemoCleanse asserts that because Philadelphia did not defend under a reservation of rights or bring a declaratory action seeking to arbitrate HemoCleanse's coverage claim at the time it denied coverage, it is now collaterally estopped from denying coverage.

We again emphasize that whether or not Philadelphia had a duty to defend HemoCleanse or is collaterally estopped from denying that duty is simply not before us; rather, the only matter at issue is whether it may compel arbitration of the issue.

HemoCleanse points primarily to two cases as support for its argument. *See Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1025 (Ind. Ct.App.1999), *trans. denied; Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897 (Ind. Ct.App.1992), *trans. denied.* But when those cases are more closely examined, it becomes clear that they are inapposite to this case inasmuch as they concern whether the insurer was collaterally estopped from challenging a determination regarding the conduct of its insured made in a prior lawsuit. Here, Philadelphia is not seeking to challenge any determination made in a prior lawsuit. To the contrary, it is seeking merely to arbitrate HemoCleanse's claim pursuant to the Policy's arbitration provision. Nothing in *Employers* or *Liberty Mutual* suggests that Philadelphia has in any way waived its right to compel arbitration.

HemoCleanse also makes a brief argument that actually does address the issue in this case: it contends that Philadelphia waived its right to arbitrate by failing to defend under a reservation of rights or to seek a declaratory judgment. It cites no authority to support this proposition. And indeed, we have held in the past that an arbitration provision is valid and binding even if the party seeking to compel arbitration may have breached the contract:

> "the very purpose of arbitration provisions would be defeated and their effectiveness severely limited if a party were held to have abandoned his arbitration rights merely because his actions might be construed to constitute a breach of the contract prior to the time he seeks a

clarification of those rights through arbitration."

*Mid–Am. Surgery Ctr., L.L.C. v. Schooler,* 719 N.E.2d 1267, 1270 (Ind.Ct.App.1999) (quoting *Goebel v. Blocks & Marbles Brand Toys,* 568 N.E.2d 552 (Ind.Ct.App. 1991)). Thus, the fact that Philadelphia denied coverage to HemoCleanse—even if it wrongfully denied coverage—does not prevent it from enforcing the Policy's arbitration provision now. HemoCleanse has cited no authority, and we can find none, to suggest that Philadelphia waived this provision by failing to defend under a reservation of rights or to seek a declaratory judgment. Accordingly, the trial court properly granted Philadelphia's motion to compel arbitration of HemoCleanse's breach of contract claim.

## II. *Philadelphia's Claim on Cross–Appeal*

■ Philadelphia contends that the trial court erred in denying its motion to compel arbitration of HemoCleanse's claim for breach of the covenant of good faith and fair dealing. Specifically, it argues that because determining the outcome of the tort claim necessarily requires determining the outcome of the breach of contract claim, the intertwined claims should both be arbitrated.

■ Our Supreme Court established the tort of breach of the covenant of good faith and fair dealing in the context of an insurance policy in *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515 (Ind.1993). An insurer that wrongfully denies coverage— "knowing there is no rational, principled basis for doing so"—has breached its duty of good faith and fair dealing. *Id.* at 520. But the *Erie* court noted that "this new cause of action does not arise every time an insurance claim is erroneously denied." *Id.* Very recently, our Supreme Court again considered this issue and reaffirmed that "a good faith dispute concerning insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured." *Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 976 (Ind. 2005).[2]

Philadelphia contends, correctly, that to determine whether it breached the covenant of good faith and fair dealing necessarily requires that the factfinder determine whether it wrongfully denied coverage by rejecting HemoCleanse's defense request. But there is no reason that the same factfinder must make both determinations at the same time. Indeed, we see no harm in permitting the arbitrator to determine whether Philadelphia wrongfully denied coverage, leaving the trial court's stay of HemoCleanse's tort claim in place pending the outcome of the arbitration. Should the arbitrator determine that Philadelphia wrongfully denied coverage, then HemoCleanse may move forward with the tort claim in the trial court; or, on the other hand, should the arbitrator determine that Philadelphia denied coverage in good faith, Philadelphia will then be free to seek dismissal of or summary judgment on the tort claim remaining in the trial court. Merely because resolution of the tort claim requires that a "coverage dispute"

**2.** In addition, however, the court noted that an insurer may breach the covenant of good faith and fair dealing in ways other than a wrongful denial of coverage; hence, an insurer may exhibit bad faith in, for example, its handling of the claim such that even if it engages in a good faith dispute over coverage it may still breach the covenant of good faith and fair dealing. *Magwerks,* 829 N.E.2d at 976–77. We note that HemoCleanse has not alleged that Philadelphia acted in bad faith in any way other than its refusal to defend HemoCleanse.

under the Policy be resolved does not make the tort claim a "coverage dispute," thereby bringing it under the umbrella of the Policy's arbitration provision. Accordingly, the trial court properly denied Philadelphia's motion to compel arbitration of HemoCleanse's tort claim.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and BARNES, J., concur.