**Sherry CLEVENGER and James Clevenger, Appellants–Defendants,**

v.

**PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, Appellee–Plaintiff.**

No. 18A02–0504–CV–340.

Court of Appeals of Indiana.

Dec. 13, 2005.

Charles R. Clark, M. Edward Krause, III, Beasley & Gilkison, LLP, Muncie, for Appellants.

Bradley D. Pippin, Law Office of the Progressive Group, of Insurance Companies, Indianapolis, for Appellee.

## OPINION

FRIEDLANDER, Judge.

Sherry Clevenger and James Clevenger appeal from the trial court's order granting summary judgment to Progressive Northwestern Insurance Company (Progressive) in Progressive's action for declaratory judgment. As restated, the dispositive issue on appeal is: Did the trial court err by granting summary judgment where the insurance policy provisions at issue are ambiguous as to the event that would trigger commencement of the limitation period for the Clevengers to bring their underinsured motorist (UIM) claim?

We reverse and remand for further proceedings.

The facts relevant to the appeal are not in dispute and disclose that on December 19, 1999, a car owned by the Clevengers, and insured by Progressive, was struck from behind by a truck driven by Paul Brandenburg. The collision caused injuries to Sherry and Ashley Clevenger.[1]

The Clevengers retained counsel. Counsel notified the Clevengers' insurer, Progressive, of their representation by telephonic communication. In August 2000, counsel for the Clevengers understood that Sherry and Ashley had completed medical treatment for their injuries attributable to the collision.[2] Counsel for the Clevengers notified Brandenburg's insurer that the treatment had been completed. Also, counsel requested information as to the limits of Brandenburg's policy. Brandenburg's insurer's reply did not disclose the limits of the policy and noted in a postscript that the "information that we have to date does not indicate that this would be a limits case." *Appendix* at 58.

On September 25, 2000, counsel for the Clevengers sent a settlement proposal to Brandenburg's insurer. At that time, Sherry Clevenger's documented medical expenses and lost wages claim was $5,511.39.

On January 15, 2001, Progressive formally acknowledged counsel's representation of the Clevengers and gave notice of Progressive's subrogation rights. Further, the letter from Progressive to the Clevengers's counsel stated: "Please forward the Medical Authorization and provider list for your clients. Be advised, our Medical Payments Coverage is reimbursable upon settlement with the wron[g]doer's insurance carrier." *Appendix* at 67.

On February 2, 2001, the Clevengers filed their complaint against Brandenburg. Counsel for the Clevengers maintained contact with Progressive. On July 17, 2001, Progressive sent a letter to the Clevengers's counsel and to Brandenburg's insurer as formal notice of its subrogation rights, requesting that any settlement draft include Progressive as a payee, and requesting that counsel and a representative of Brandenburg's insurer sign an acknowledgement of Progressive's lien.

According, to the Clevengers's brief on appeal, and not disputed by Progressive, in January 2002, approximately one month after the two-year statute of limitations period would have expired had the Clevengers not instituted a lawsuit against Brandenburg, Sherry resumed treatment for her injuries stemming from the collision. Her physician recommended surgery that was performed on February 22, 2002. Sherry's medical expenses increased to $30,021.65.

On August 15, 2003, counsel for the Clevengers sent a letter to counsel for Brandenburg noting that "it is my understanding that your client has insurance coverage policy limits in the amount of $50,000 per person . . . ." *Appendix* at 69. On September 23, 2003, Brandenburg's counsel offered to settle Sherry's claim for the $50,000 policy limits.[3] Counsel for the

---

1. The complaint for damages against Brandenburg, filed by the Clevengers on February 2, 2001, avers in one paragraph that Sherry was the driver and in a different paragraph avers that Sherry was the passenger. *See Appendix* at 63–64. We presume that Ashley should have been listed in one of those paragraphs as either the driver or the passenger. The discrepancy has no bearing on our analysis.

2. James's claim was for loss of consortium.

3. The demand and offer for Ashley's claim was well below the policy limits. The discussions at the summary judgment hearing indi-

Clevengers notified Progressive of the settlement offer by letter dated September 25, 2003. Counsel requested authority to accept the $50,000 policy limits and stated: "This will further advise that we intend to make a claim on the underinsurance portion of the Clevenger[s's] policy." *Id.* at 70.

On August 13, 2004, Progressive filed its complaint for a declaratory judgment wherein it requested a determination that the Clevengers's "claims for underinsurance benefits are untimely and prohibited by the express language of the Defendants' Progressive policy." *Appendix* at 8. On October 5, 2004, Progressive filed its motion for summary judgment.

On January 28, 2005, a hearing was held on summary judgment. Counsel for Progressive acknowledged that Progressive had notice of both the collision and the Clevengers's "med-pay" claims, but claimed that knowledge would not constitute knowledge of a potential UIM claim by the Clevengers because, *inter alia,* UIM claims are managed by a different adjuster than "med-pay" claims. On February 22, 2005, the trial court entered summary judgment for Progressive. This appeal ensued.

We review a ruling on a motion for summary judgment using the same standard employed by the trial court. Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Nobbe,* 831 N.E.2d 835 (Ind.Ct.App.2005).

If the moving party successfully demonstrates the absence of any dispute regarding the material facts and their inferences, then our review is limited to determining whether the trial court correctly applied

the law to the undisputed facts. *Burkett v. American Family Insurance Group,* 737 N.E.2d 447 (Ind.Ct.App.2000). We review de novo such pure questions of law. *Id.* Reversal of summary judgment may be warranted if our review discloses an incorrect application of the law to the undisputed facts. Here, the relevant facts are undisputed.

The dispositive contention by the Clevengers is that the Progressive policy provisions are ambiguous. We start with our standard for reviewing the construction of contracts:

> Insurance contracts are subject to the same rules of construction as other contracts: we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. In accomplishing that goal, we must construe the insurance policy as a whole. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. Where a policy's language is ambiguous, we must strictly construe it against the insurer.
>
> We must accept an interpretation of the contract language that harmonizes the provisions rather than one that supports a conflicting version of the provisions. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. If reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. Terms in a contract are given their usual and common meaning unless, from the contract, it can be determined that some other meaning was intended.

*HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.,* 831 N.E.2d 259, 262 (Ind.Ct.App. 2005) (citations omitted).

cate that the only UIM claim was with regard     to Sherry.

■ The Clevengers urge, *inter alia,* that the contract terms of the Progressive policy are ambiguous as to at least two matters important to the inquiry at issue: 1) the contract expressly prohibits an action for UIM coverage against Progressive by its insured until such time as coverage by a party at fault is exhausted and paid— a precondition that did not occur here until after the two-year period from the collision date had expired, and 2) the contract provision limiting the time within which to bring an action against Progressive does not specify when the two-year period commences.

We turn to the Progressive policy. Two policy provisions are at issue. The provision regarding UIM coverage, denominated "Part III—UNINSURED/UNDER-INSURED MOTORIST COVERAGE," provides in relevant part:

Subject to the Limits of Liability, if **you** pay the premium of Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive, exemplary or treble damages, which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury:**

1. sustained by an **insured person;**
2. caused by an **accident;** and
3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle** or an **underinsured motor vehicle.**

**We** will pay under this Part III only after the limits of liability under all applicable **bodily injury** liability bonds and policies have been exhausted by payment of judgments or settlements....

*Appendix* at 26 (Emphasis in original). The Clevengers point to Progressive's specific statement that UIM coverage will be paid only *after* the exhaustion of the tortfeasor's policy limits "by payment of judgments or settlements". *Id.*

Progressive relies almost entirely upon the contract provision that shortens its insureds's ability to bring suit against it. The provision, denominated "**LEGAL ACTION AGAINST US,**" provides in pertinent part:

**We** may not be sued unless there is full compliance with all the terms of this policy. Any lawsuit against **us** by **you,** a **relative,** or any other insured person following an **accident,** or an alleged breach of **our** obligations under this policy, must be commenced within the time period set forth as the bodily injury statute of limitations in the laws of the state listed in **our** records as **your** principal address.[4]

*Id.* at 41 (Footnote added) (emphasis in original). The parties agree that a contractual limitation of actions that shortens the time an insured would have to bring a breach of contract claim against the insurer is enforceable in Indiana. *See Meridian Mutual Insurance Co. v. Caveletto,* 553 N.E.2d 1269 (Ind.Ct.App.1990).

Progressive urged below, and here on appeal, that the Clevengers's UIM claim was lost pursuant to the provisions of their policy with Progressive when they failed to institute an action against Progressive within the two-year statute of limitations period for bodily injury claims in Indiana as measured from the date of the collision with Brandenburg. Progressive does not dispute that on the date that it urges as the contractually shortened limitations period date, beyond which the Clevengers could not proceed against Progressive on a UIM claim, the Clevengers did not know that they would have a UIM claim.

---

**4.** The parties agree that the bodily injury statute of limitations in Indiana is two years.

According to the Clevengers, the first sentence of the provision, prohibiting any lawsuits against Progressive *"unless there is full compliance with all terms of this policy"* would dictate that the Clevengers first comply with the UIM coverage requirement that they "exhaust" the tortfeasors's coverage prior to instituting suit against Progressive. *Appendix* at 26, 41. Further, the Clevengers contend that the policy terms do not specify when the two-year limitations period commences. Thus, the insurance provisions are ambiguous.

In general support of their allegations regarding ambiguity, the Clevengers assert that they kept Progressive apprised of the matters associated with their negotiations with Brandenburg's insurer and counsel; they filed suit against Brandenburg in a timely fashion, *i.e.*, within the two-year statute of limitations period; they complied with the policy provision requiring them to "exhaust" the tortfeasor's insurance prior to initiating their UIM claim against Progressive; they did not know of a UIM claim until after the two-year statute of limitations period for bodily injury had expired if measured from the date of the collision; and they did assert their UIM claim in a timely fashion if measured from the time they discovered that they would have a UIM claim.

The Clevengers urge that a fair reading of the two contract terms indicates that the commencement of the statute of limitations period should be from the time of the settlement with the wrongdoer and any potential claim is known, not from the date of the collision. According to the Clevengers, Progressive drafted the contract, and if Progressive had desired that the time period commence as of the date of the collision, without regard to the insureds's knowledge of a claim, it could have so stated. Because the contract does not so provide, and the contract provisions specifically require exhaustion of other sources, and the contract provisions are ambiguous, the Clevengers argue that the provisions must be construed against Progressive. *See HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.*, 831 N.E.2d 259.

Progressive contends that the Clevengers's notice to Progressive regarding the existence of personal injury claims against Brandenburg did not comport with the contract terms that shortened the time that an insured could bring claims against Progressive as their insured. Further, Progressive contends that the notice of "med-pay" claims did not constitute notice that the Clevengers's would have UIM claims. Thus, according to Progressive, once the Clevengers's failed to institute an action against Progressive for UIM coverage within two years of the collision, the claim was foreclosed.

Progressive relies upon two cases, *Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269, and *Union Automobile Indem. Ass'n v. Shields*, 79 F.3d 39 (7th Cir.1996). In both cases, a contractual limitation period to bring an insurance claim was upheld. In both cases, the policy provision specified the event that would trigger the commencement of the limitation period. In *Caveletto*, the provision stated: "We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss ...". *Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d at 1269. In *Shields*, the provision stated: "No suit, action or arbitration proceeding for the recovery of any claim under this endorsement shall be sustainable in any court of law or equity unless a COVERED PERSON shall have complied with all the terms of this endorsement, nor unless commenced within two (2) years after the occurrence of loss." *Union Automobile Indem. Ass'n v. Shields*, 79 F.3d at 40 (noting that the insured did not give notice

of the accident to its insurer until after the contractual limitation period, as explicitly measured from the date of the loss, had expired). To the extent that both *Caveletto* and *Shields* were concerned with policy provisions that specified the triggering event [5] from which to measure the limitations period, the cases can be construed to support the Clevengers's argument that their Progressive policy is ambiguous, in part, for lacking such specificity.

We find instructive a recent decision from the Iowa Supreme Court, *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775 (Iowa 2000). In *Hamm*, the court determined that an insurance policy, with almost identical policy provisions as are at issue here, was ambiguous "as to whether an insured must first pursue a claim to recover the limits of the tortfeasor's liability coverage prior to filing suit against the insurer for UIM benefits." *Id.* at 783. Noting that the policy should be construed against the insurer, as the drafter, the court reasoned:

> We therefore conclude that the purpose of the policy language which states, "[w]e may not be sued under the Underinsured Motorist coverage on any claim that is barred by the tort statute of limitations," is to disallow a UIM claim if the insured has allowed the underlying

tort claim to become barred by not settling or bringing suit within the period of limitations.

*Id.* at 784. The court noted that the policy did not establish either the time for bringing a UIM claim or the point in time when the limitations period would commence. Accordingly, the court determined that the policy was ambiguous.[6] We agree with that reasoning.

Here, the Clevengers filed suit against the tortfeasor, Brandenburg, within the applicable statute of limitations period. The Clevengers exhausted the coverage maintained by Brandenburg prior to making their claim for UIM coverage from Progressive, as required by the policy. The policy provision requiring suit within the statute of limitations period for bodily injury did not specify the time from which the limitations period would be measured, unlike the policy provisions in *Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269, and *Union Automobile Indem. Ass'n v. Shields*, 79 F.3d 39. Further, the policy provision aimed at contractually limiting the insured's ability to bring a contract claim against Progressive—a ten-year statute of limitations period—also specified that Progressive could not be sued by its insured prior to compliance with all policy provisions. Taken together, these factors

---

**5.** In the *Caveletto* decision, the term "loss" was not defined. *Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269; *but see Union Automobile Indem. Ass'n v. Shields*, 79 F.3d at 40 (policy term more descriptive by providing that a claim could be sustained unless commenced within two years "after the occurrence of loss"). Neither the *Caveletto* decision nor the *Shields* decision offered an explanation as to whether the term was defined in the policy. *See Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269; *Union Automobile Indem. Ass'n v. Shields*, 79 F.3d 39. The analyses proceeded from the basis that the time of the "loss" meant the time of the fire damage to real property in *Caveletto*, and the automobile collision in *Shields*. *Id.* In the

absence of a definition, it could be argued that the "loss" refers to the time that the insurer breaches the contract.

**6.** The court also noted that the insurer's position would lead to an unfair result by terminating the insured's rights to UIM benefits at a point when the insured might not know of the existence of a claim. The court seemed to indicate that the "unfairness" was another circumstance to be considered in determining whether an ambiguity existed. To be sure, statutes of limitation or contract provisions limiting rights could be the source of "unfairness"; but, such is not the source of ambiguity here.

require a conclusion that the UIM "exhaustion" provision conflicts with the provision contractually shortening the limitations period within which an insured could bring an action against Progressive for failing to pay UIM coverage. Thus, the Progressive policy is ambiguous.

Because the policy provisions at issue are ambiguous, the trial court erred by construing the policy in favor of Progressive.[7] *See HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.,* 831 N.E.2d 259 (ambiguous insurance contracts must be strictly construed against the insurer).

Accordingly, the trial court's entry of summary judgment for Progressive is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

VAIDIK, J., and SULLIVAN, J., concur.

---

7.  Progressive urges that it is incumbent upon the insureds to file suit against Progressive, as their insurer, prior to the end of the contractually truncated period for bringing such a claim whether or not the insured knows of the existence of an actual claim because the insured is forever foreclosed from bringing the suit two years after the collision. While we are unprepared to find an ambiguity based upon the "unfairness" of foreclosing a lawsuit before it could be known, neither will we countenance such a strained reading of the contract to require a lawsuit based upon speculation that one could arise. Moreover, we fail to see the wisdom in urging insureds to bring wholly unsupported legal actions. *See Gaddis v. McCullough,* 827 N.E.2d 66 (Ind.Ct. App.2005) (reversing trial court's denial of attorney's fees pursuant to Ind.Code § 34–52–1–1(b) for a frivolous, unreasonable, or groundless claim and noting that standing to invoke a court's jurisdiction is implicated when there exists no demonstrable injury to the complainant); I.C. § 34–52–1–1(b)(1) (West 1999) (allowing attorney's fees to a prevailing party if the court finds that a party brought an action "that is frivolous, unreasonable, or groundless"). Further, Ind. Professional Conduct Rule 3.1 mandates that lawyers "shall not bring ... a proceeding ... unless there is a basis for doing so that is not frivolous ...." *See also* Ind. Trial Rule 11 (requiring counsel to verify "that to the best of his knowledge, information, and belief, there is good ground to support" the pleading or motion filed). Here, in order to file suit before the expiration of the limitations period advocated by Progressive ˙ the Clevengers's counsel would have had to forecast Sherry Clevenger's return to medical treatment after the expiration of the limitations period and speculate that the treatment would cause Sherry's claim to increase dramatically to the point of outstripping Brandenburg's insurance policy limits, thereby supporting a UIM claim against Progressive. The bridge to a non-frivolous claim would have been weak indeed. Progressive's solution is neither good practice nor allowed under our statutes and rules.