*27 BARNES, Judge,
concurring in result.
I fully concur in the result reached by my colleagues. However, I reach that result differently.
Primarily, unlike my colleagues, I do not place much reliance upon our decisions in Langreck and Old Republic. Those cases dealt specifically with the fundamental difference between true excess or umbrella insurance policies versus primary insurance policies that purport to be excess in limited situations. In Langreck, we discussed at length the particular hallmarks of umbrella insurance policies and how they differ from primary liability policies. See Langreck, 816 N.E.2d at 494-96. Ultimately, we held that, “in coverage priority disputes between a primary insurer that purports to be excess in limited circumstances and an insurer who issues a true excess or umbrella liability policy, the umbrella policy is always excess to the essentially primary policy,” regardless of statutory priority provisions for automobile liability policies. Id. at 498. Here, neither policy at issue is an umbrella policy. Both policies are essentially primary policies with limited “other insurance” or excess coverage clauses.
Central does not deny that, by virtue of the plain and unambiguous language in both its policy and Motorists’ policy, Central’s policy provides primary underin-sured motorists coverage to Pilotte while Motorists’ policy only provides excess un-derinsured motorists coverage. There is no conflict between the terms of the policies. Central wants to be saved from the result of its own policy drafting by the Garage Liability Statute, claiming that the statute requires its coverage to be excess only. It cites cases for the proposition that insurance policies cannot violate statute. I note that in Westfield Companies v. Knapp, 804 N.E.2d 1270, 1274 (Ind.Ct.App.2004), trans. denied, we said, “Unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect.” Also, it is clear to me that the primary purpose of our insurance laws is to protect the public, given “the frequently unequal bargaining power between insurance companies and insureds.” Justice v. Am. Family Mut. Ins. Co., 4 N.E.3d 1171, 1176 (Ind.2014). Insurers are permitted to limit their liability in any manner consistent with public objectives expressed in state statutes. Id. I do not believe such statutes can be used to correct an insurance company’s drafting that possibly expanded their liability beyond the minimum required by statute. To the contrary, the general rule appears to be, “Insurance companies and insureds may contract for coverage in excess of the coverage required by particular statutes, particularly when the statutory provision is for the benefit of the insured, and by providing such broader coverage the policy does not violate public policy.” 44 C.J.S. Insurance § 474, p. 585 (2007) (citing Standard Mut. Ins. Co. v. Pavelka, 580 F.Supp. 224 (S.D.Ind.1983) (applying Indiana law)).
Although Central’s policy is labeled a “garage” policy, it is unambiguously written in such a way to provide primary underinsured motorist coverage to Pilotte under the facts here. Presumably, Central knew what it was doing when it wrote its policy in that way and charged Ken-worth premiums accordingly. Conversely, Motorists’ policy unambiguously provides only excess coverage to Pilotte, and so that coverage is not “available” to him under the language of the Garage Liability Statute until Central’s policy is exhausted. As such, I join the majority in voting to affirm the trial court’s granting of Motorists’ partial summary judgment motion.