**Henry W. MICHAEL and Bobbi M. Michael, Appellants–Plaintiffs,**

v.

**Jerry L. WOLFE and Hoosier Insurance Company, Appellees–Defendants.**

No. 34A05–9912–CV–562.

Court of Appeals of Indiana.

Oct. 24, 2000.

E. Frank Welke, Kokomo, Indiana, Attorney for Appellant.

Thomas J. Trauring, McGarvey, Trauring & Wilson, Kokomo, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge

Henry Michael suffered damages as a result of an automobile accident negligently caused by Jerry Wolfe. Michael and his wife filed suit against Hoosier Insurance Company, claiming that Michael was entitled to uninsured motorist coverage from Hoosier because Wolfe was not insured at the time of the accident. At a bench trial, the court entered judgment in favor of Hoosier at the conclusion of Michael's presentation of evidence. Michael appeals, raising the following restated issue for our review: whether evidence that the tortfeasor in an automobile accident failed to file a Certificate of Compliance with the Indiana Bureau of Motor Vehicles is sufficient proof that the tortfeasor was uninsured and driving an uninsured motor vehicle at the time of the accident.

We affirm.

### Facts and Procedural History

On December 9, 1996, Henry Michael was operating his employer's 1988 Chevrolet van and had stopped in his lane of travel in order to make a left-hand turn into his employer's place of business. As Michael was waiting to make the turn, a vehicle driven by Jerry Wolfe negligently struck the van from behind. As a result of the accident, Michael suffered personal injuries, medical expenses, and lost wages.

Michael and his wife, Bobbi,[1] filed a complaint for damages against Wolfe[2] and his employer's automobile insurance carrier, Hoosier Insurance Company (Hoosier). Michael claimed that he was entitled to uninsured motorist coverage by Hoosier because Wolfe was not insured at the time of the accident.

A bench trial was held on October 19, 1999. Following Michael's presentation of evidence, Hoosier moved for judgment on the evidence. The trial court granted Hoosier's motion, concluding that Michael was not entitled to uninsured motorist coverage by Hoosier because Michael had failed to prove by a preponderance of the evidence that Wolfe was not insured at the time of the accident. This appeal ensued.

---

1. At the time of trial, Michael and Bobbi were no longer married.

2. Wolfe did not file an answer to the Michaels' complaint, nor did he appear at trial. He is not a party to this appeal.

### Discussion and Decision

At the outset, we note that a motion for judgment on the evidence is not proper in a trial to the bench. *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 985 (Ind.Ct.App.1999), *trans. denied.* Such a motion addresses the issue of whether there is sufficient evidence to justify submitting the case to a jury. *Id.* Because the case at bar was tried before the bench, it should be treated as a motion for involuntary dismissal pursuant to Trial Rule 41. *Id.* When faced with a motion for involuntary dismissal, the trial court may weigh evidence, judge witness credibility, and decide whether the party with the burden of proof has established a right to relief or defense. *Id.*

Indiana's Uninsured Motorist Coverage statutes require that, in each automobile liability policy, insurers make coverage available for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles.... Ind. Code § 27–7–5–2 (1993). In suits by an insured against an insurer claiming a right to coverage under an uninsured motorist provision, the insured must prove that he is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle. Generally, this means that the insured must establish the fault of the tortfeasor, the fact that there is · no insurance policy covering the motorist or motor vehicle, and resulting damages. 8C John A. Appleman & Jean Appleman, *Insurance Law and Practice*, § 5086.15 (1981); 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d*, § 123:50 (1997). Almost thirty years ago, in *Smith v. Midwest Mutual Insurance Company*, 154 Ind.App. 259, 289 N.E.2d 788, 796 (1972), we stated in dicta that in a direct action by the insured against its insurer, the burden of proof with respect to non-insurance ... falls upon the insured.

The only evidence admitted at trial in support of Michael's allegation that Wolfe was driving an uninsured motor vehicle on the date of the accident was a form purportedly filled out by the Indiana Bureau of Motor Vehicles (BMV) entitled Request for Information For SR 21. This document was apparently completed by the BMV at the request of Michael's attorney, and indicated that Wolfe's operator's license was suspended on July 19, 1997 due to his failure to provide the BMV with a Certificate of Compliance proving his financial responsibility for the December 9, 1996 collision at issue.[3] Michael claims this evidence is sufficient to prove that Wolfe was driving an uninsured motor vehicle.

Michael relies on *Valdes v. Prudence Mutual Casualty Co.*, 226 So.2d 119 (Fla. Dist.Ct.App.1969) to argue that the Request for Information for SR 21 was suffi-

---

**3.** The State of Indiana requires any person who operates a vehicle on a public highway to meet minimum standards for financial responsibility with respect to the motor vehicle so operated. Ind.Code § 9–25–4–1 (1998). Financial responsibility is in effect with respect to a motor vehicle if a motor vehicle liability insurance policy is issued with respect to the motor vehicle, a bond is executed with respect to the vehicle, or the BMV has issued a certificate of self-insurance to the owner or operator of the vehicle. *Id.* § 9–25–4–4.

Motorists who are involved in an accident must demonstrate proof of financial responsibility to the BMV. *Id.* § 9–25–5–2. The BMV sends each driver involved in an accident a request for proof of financial responsibility and warns the drivers that their operators' licenses will be suspended unless they provide such proof within the requisite time. *Id.* § 9–25–5–3. This request is sent via first class mail to the last address on record with the BMV. *Id.* In order for a driver to avoid suspension of his license, he must file a Certificate of Compliance, otherwise known as an SR 21 form, indicating that the driver did, in fact, have insurance or was otherwise in compliance with the financial responsibility laws on the date of the accident. *Id.* § 9–25–5–4. In the event the motorist does not provide the BMV with a Certificate of Compliance, the BMV administratively suspends the motorist's license. *Id.* § 9–25–6–3.

cient to establish a prima facie case that Wolfe and the vehicle were uninsured on the date of the accident, and that the burden of proof should shift to Hoosier to prove that Wolfe or the vehicle were insured. In *Valdes,* the plaintiff instituted a direct action against his insurance carrier claiming that he was entitled to compensation under the uninsured motorist provision of his policy. The insurance company denied that the driver who caused the accident was uninsured. The Florida Court of Appeals held that the plaintiff:

> proved through public records of both the Miami office and the Tallahassee office of the Financial Responsibility Division, office of the Insurance Commissioner of the State of Florida, that the owner-driver of the offending automobile had no automobile liability insurance on the date of the collision. The automobile was registered in Florida and carried a Florida license plate. In addition the Miami Regional Co-ordinator for the State of Florida Financial Responsibility Division appearing as a witness for the [plaintiff] testified that the driver of the offending automobile did not respond to a notice asking him whether he was uninsured on the date of the collision and that as a consequence his right to operate an automobile in this state had been suspended.

*Id.* at 120. Based on this evidence, the plaintiff had established a prima facie case and the duty of going forward with the evidence shifted to the [insurance company]. *Id.*

█ Indiana has never considered the propriety of a burden shift in cases where the insured has presented prima facie evidence that the offending vehicle and its driver are uninsured. However, upon consideration of the difficulty of proving a negative absent an admission by the tortfeasor, and the greater resources available to an insurer to obtain information regarding coverage, we hold that when an insured establishes a prima facie case that there is no insurance applicable, the burden shifts to the insurer to come forward with evidence that the tortfeasor or vehicle was insured.

█ What is required of the insured to establish prima facie evidence will necessarily vary from case to case. In the present case, unfortunately, the record is poorly developed and we are constrained to find that Michael has not met his burden of establishing a prima facie case.[4] The Request for Information for SR 21, which was not signed, verified or in any way authenticated by any representative of the BMV,[5] demonstrates only that Wolfe's driver's license was suspended for failing to provide the BMV with a Certificate of Compliance.[6] While this evidence is relevant to the inquiry into the tortfeasor's status as an uninsured motorist, it does not lead only to the inference that the tortfeasor did not have insurance coverage on the date of the accident. It is also quite possible that the tortfeasor failed to file a Certificate of Compliance because he never received notice from the BMV, or that he failed to respond out of neglect or inattention. On the present record, we have no way to know which inference is the correct one.

██ Moreover, to recover on an uninsured motorist claim, the insured must prove that there is no policy applicable to the vehicle driven by the tortfeasor. *See Whitledge v. Jordan,* 586 N.E.2d 884, 885–86 (Ind.Ct.App.1992). The Request for Information for SR 21 at issue fails to provide any evidence as to ownership of the vehicle Wolfe was driving and whether the

---

4. At the oral argument heard in this cause on September 26, 2000, both counsel for Michael and counsel for Hoosier referred to facts and documents not in the record. We remind the parties that this is inappropriate and we do not consider such evidence.

5. Hoosier did not object to its admission.

6. There was apparent confusion about the operative dates of the coverage at issue in this case. R. at 24.

owner, if someone other than Wolfe, had an applicable policy on the vehicle.

■ Michael also contends that he may meet his burden by showing that he has made reasonable efforts to ascertain the existence of an insurance policy applicable to the offending vehicle and its driver and that such efforts have proven fruitless. He argues that, consequently, an inference may be drawn that there is no insurance policy, and the burden should shift to the insurer to prove that the tortfeasor or vehicle was insured. Michael relies primarily on *State Farm Mut. Insurance Company v. Matlock*, 462 S.W.2d 277 (Tex. 1970), which was legislatively overruled in 1977. *See Wiley v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 176046, at *2 (Tex.App. Apr.1, 1999) (*Matlock* was premised on the assertion that "Texas had not yet had an occasion to allocate the burden of proving the uninsured status of an operator in direct actions by an insured against his insurer," but the legislature since has assigned that burden to the insurer). Nevertheless, our own research reveals support for Michael's proposition in other jurisdictions. *See Van Hoozer v. Farmers Ins. Exchange*, 219 Kan. 595, 549 P.2d 1354, 1367 (1976); *Abraham v. Great American Ins. Co.*, 21 Ohio Misc. 170, 256 N.E.2d 265, 267 (1969); *Merchants Mut. Ins. Co. v. Schmid*, 56 Misc.2d 360, 288 N.Y.S.2d 822, 825 (N.Y.Sup.Ct.1968); *Signal Ins. Co. v. Walden*, 10 Wash.App. 350, 517 P.2d 611, 613 (1973). We think this is an appropriate standard to apply. Accordingly, we hold that an insured may also establish a prima facie case by showing that he has made reasonable efforts to determine whether an applicable insurance policy exists and these efforts have been fruitless. Once the insured has met that burden, the burden shifts to the insurer to show that there is an applicable policy.

Although the reasonable efforts required by the insured to effect a burden shift will also vary with the individual case, the record before us does not provide evidence that Michael made reasonable efforts to ascertain whether there was an insurance policy covering either Wolfe or the vehicle. Indeed, it appears from the record that Michael made very little effort to ascertain whether Wolfe owned the vehicle or whether the vehicle he was driving was covered.[7]

For all of these reasons, the judgment of the trial court is affirmed.

Affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.

---

**7.** Beyond the Request for Information for SR 21, Michael also offered a letter from St. Paul Fire and Marine Insurance Co. to his counsel, in which said insurance company stated it had cancelled a policy held by Wolfe some six weeks prior to the accident. Hoosier's objection to admission of this letter was sustained. Michael did not make an offer to prove, nor does he allege error in the trial court's denial of admission. Accordingly, we do not consider it.