STATE FARM MUTUAL AUTO-
MOBILE INSURANCE CO.,
Appellant–Defendant,

v.

Yevgeniy LEYBMAN and Mikhlina
Leybman, Appellees–Plaintiffs.

No. 02A04–0201–CV–0008.

Court of Appeals of Indiana.

Nov. 1, 2002.

Thomas M. Kimbrough, Michael H. Michmerhuizen, Barrett & McNagny LLP, Fort Wayne, IN, Attorneys for Appellant.

James P. Fenton, Alan VerPlanck, Eilbacher Scott, P.C., Fort Wayne, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant State Farm Mutual Automobile Insurance Co. (State Farm) appeals the declaratory judgment entered in favor of its policyholders appellees-plaintiffs Yevgeniy and Mikhlina Leybman. The dispositive issue is whether another insurance company's offer of its policy limits precludes the Leybmans from seeking uninsured motorist coverage under their policy from State Farm. Concluding that the offer of policy limits constitutes insured motorist coverage, we hold that the Leybmans were not entitled to the uninsured motorist coverage under their own

policy and reverse the trial court's judgment.

## FACTS

The material facts are undisputed. On December 10, 1998, thirty-six-year-old James Gaddy was driving a pick-up truck owned by his father, John Gaddy. John had not given James permission to drive the truck on that day. He struck and killed the Leybmans' fifteen-year-old son, Vitaliy, as the young man crossed an intersection on foot. Although James did not have an insurance policy, John maintained insurance on the pick-up truck through GRE Insurance Company (GRE). The policy listed John and his wife as insured drivers, but not James. In addition, the GRE policy provided coverage for the permissive use of the pick-up but not for any nonpermissive use of the vehicle.

John informed GRE of the accident the next day. GRE, accordingly, sent an adjuster to determine whether an insured driver was operating the pick-up at the time of the accident or whether an uninsured driver had permission to use the pick-up at the time of the accident. The Leybmans filed suit against both John and James on February 1, 1999, for Vitaliy's wrongful death. When GRE received notice of the suit, it retained a law firm to represent both John and James. Within nine days after the suit was filed, GRE offered the policy limits of $25,000 to the Leybmans to settle the case. The settlement was contingent on the Leybmans executing a release of liability of both John and James. As of the date of the trial court's amended order of judgment, GRE's

offer had not been withdrawn or accepted. Appellant's App. p. 14.

The Leybmans subsequently filed a declaratory judgment action against their insurer State Farm, requesting the $50,000 limits of their policy's uninsured motorist provision. That policy provided:

> We will pay damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The bodily injury must be sustained by an insured. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

Appellant's App. p. 64 (some emphases omitted). In turn, an uninsured motor vehicle is defined as:

> 1. a land motor vehicle, the ownership, maintenance or use of which is:
>
>    a. not insured or bonded for bodily injury liability and property damage liability at the time of the accident....

Appellant's App. p. 64. The trial court concluded that GRE's settlement offer to pay John's policy limits of $25,000 did not constitute insurance coverage for the "ownership, maintenance or use" of the pick-up at the time of the accident. Appellant's App. p. 18. State Farm now appeals and the Leybmans cross-appeal.[1]

## DISCUSSION AND DECISION

### I. Standard of Review

■ When, as here, the trial court finds the facts specially and states its conclusions thereon pursuant to Ind. Trial

---

1. A conclusion that the Leybmans were not entitled to the uninsured motorist coverage is dispositive of all issues raised on appeal, including the Leybmans' cross-appeal for entry of an immediate money judgment. Therefore, we address only the issue of the settlement offer's effect on the State Farm uninsured motorist provision and need not address the issues raised on cross-appeal.

Rule 52, the court on appeal shall not set aside the findings or judgment unless clearly erroneous. *McGinley–Ellis v. Ellis,* 638 N.E.2d 1249, 1252 (Ind.1994). In applying a two-tiered standard of review, we " 'determine whether the evidence supports the findings and the findings support the judgment.' In deference to the trial court's proximity to the issues, 'we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment.' " *Oil Supply Co. v. Hires Parts Serv., Inc.,* 726 N.E.2d 246, 248 (Ind.2000) (citation omitted) (quoting *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994)). We do not reweigh the evidence or determine the credibility of witnesses. *Hughes v. City of Gary,* 741 N.E.2d 1168, 1172 (Ind.2001). Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.* However, appellate courts owe no deference to trial court determinations deemed questions of law. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001).

■ Construction of the terms of a written contract is a pure question of law for the court, reviewed de novo. *Harrison v. Thomas,* 761 N.E.2d 816, 818 (Ind. 2002). "Although some 'special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds, if a contract is clear and unambiguous, the language therein must be given its plain meaning.' " *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002) (quoting *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985)). However, " '[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 244 (Ind.2000) (alteration

in original) (quoting *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996)). A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *Beam,* 765 N.E.2d at 528 When construing the meaning of an insurance policy, " 'an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party.' " *Id.* (quoting *Auto. Underwriters, Inc. v. Hitch,* 169 Ind.App. 453, 457, 349 N.E.2d 271, 275 (1976)).

## II. Whether GRE's Offer of Policy Limits Constituted Insurance

■ State Farm asserts that GRE's offer to the Leybmans to settle the case for the $25,000 limits of John's policy constituted insurance of the accident in accord with State Farm's policy and the text and purpose of Indiana's Uninsured/Underinsured Motorist (UIM) Statute. In addressing State Farm's argument, we first turn to the definition of an "uninsured motor vehicle" found in the UIM Statute:

> (a) For the purpose of this chapter, *the term uninsured motor vehicle,* subject to the terms and conditions of such coverage, *means a motor vehicle without liability insurance* or a motor vehicle not otherwise in compliance with the financial responsibility requirements of IC 9–25 or any similar requirements applicable under the law of another state, and includes an insured motor vehicle where the liability insurer of the vehicle is unable to make payment with respect to the legal liability of its insured within the limits specified in IC 9–25–4–5 because of insolvency.

Ind.Code § 27–7–5–4(a) (emphasis added). The minimum amount of financial responsibility for the death of an individual re-

sulting from a motor vehicle accident is $25,000. Ind.Code § 9–25–4–5(1).

The purpose of the UIM Statute has repeatedly informed Indiana appellate court interpretation of automobile insurance contracts. *See, e.g., Corr v. Am. Family Ins.,* 767 N.E.2d 535, 540 (Ind. 2002) ("Our holding today is also congruent with the underlying purpose of [underinsured motor vehicle] coverage, which broadly stated is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance."); *West Bend Mut. v. Keaton,* 755 N.E.2d 652, 655 (Ind.Ct.App.2001) ("The main purpose of the statute is to place an injured insured 'in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the financial responsibility act.' " (quoting *Capps v. Klebs,* 178 Ind.App. 293, 382 N.E.2d 947, 951 (1978))), *trans. denied.*

In a case interpreting a commercial umbrella insurance policy, our supreme court more specifically described the purpose of uninsured motorist coverage:

> " '[U]ninsured motorists coverage' is designed to close the gaps inherent in motor vehicle financial responsibility and compulsory insurance legislation, and this insurance coverage is intended, within fixed limits, to provide financial recompense to innocent persons who receive injuries and the dependents of those who are killed, *through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages.*"

*United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 459 (Ind.1999) (alteration and emphasis added) (quoting *Wright v. Fidelity,* 270 N.C. 577, 155 S.E.2d 100, 106 (1967)). Indeed, the very text of the UIM statute itself is "to be 'considered a part of every automobile liability policy as if written therein.' " *Id.* (quoting *Ind. Ins. Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419, 425 (1970)).

Through GRE's offer of the $25,000 policy limits, James Gaddy *can* be made to respond to the damages resulting from the accident. *See DePrizio,* 705 N.E.2d at 459. This offer of the policy limits satisfies the minimum requirements prescribed by the financial responsibility act. The insurer's offer of the policy limits, as a result, constituted coverage of the accident. Because insurance was available for the offending party's act, there was no need for resort to the Leybman's uninsured motorist policy.

The Leybmans counter that State Farm's policy should be read and interpreted according to its own terms without reference to the meaning of "uninsured motor vehicle" found in the UIM Statute. The State Farm policy defines an uninsured motor vehicle as:

> 1. a land motor vehicle, the ownership, maintenance *or* use of which is:
>
>    a. not insured or bonded for bodily injury liability and property damage liability *at the time of the accident....*

Appellant's App. p. 64 (emphases added). Focusing solely on the policy's phrase, "the ownership, maintenance *or* use," the Leybman's contend that James's "use" of the vehicle was not insured at the time of the accident. They rely on the policy's disjunctive term "or," which they define as "the opposite of 'and.' " Appellees' Br. p. 6. In their view, the policy covered the ownership and maintenance of the vehicle—but not its use—at the time of the accident.

We see no reason for parsing the State Farm policy in this manner. GRE offered the $25,000 policy limits in exchange for

releasing John and James Gaddy from any liability arising from the use of the vehicle at the time of the accident. The offer of the policy limits is tantamount to coverage of the use of the vehicle at the time of the accident. The artificial parsing of State Farm's policy and defining "or" as the opposite of "and" is of no analytical value here. If the text and purpose of the UIM Statute are to be considered in interpreting State Farm's policy, the policy means that a vehicle is insured when an insurer makes its policy limits available to an injured party. Here, the offending party has complied with the minimum requirements of the financial responsibility act. *Keaton*, 755 N.E.2d at 655. Thus, State Farm's uninsured motorist coverage was inapplicable.[2]

Judgment reversed.

VAIDIK, J., and BARNES, J., concur.

---

**2.** Our opinion does not address whether the offer of policy limits may defeat underinsured motorist coverage.