Susan **MATTESON**, Appellant–
Plaintiff,

v.

**CITIZENS INSURANCE COMPANY
OF AMERICA**, Appellee–
Defendant.

No. 02A03–0508–CV–371.

Court of Appeals of Indiana.

March 23, 2006.

R. John Wray, Fort Wayne, for Appellant.

Robert B. Sutherland, Citizens Insurance Company, Broadview Heights, OH, for Appellee.

## OPINION

SHARPNACK, Judge.

Susan Matteson appeals the trial court's grant of summary judgment to Citizens Insurance Company of America ("Citizens"). Matteson raises four issues, which we consolidate and restate as whether the trial court erred by granting Citizens' motion for summary judgment. We affirm.[1]

This litigation concerns the applicability of Matteson's uninsured motorist coverage with Citizens to an accident that claimed the life of her husband, Bradley Matteson. On October 5, 2000, Bradley, was involved in an automobile accident with a semi truck in Fort Wayne. Michael Huber was operating the semi truck. Joseph Kersey, who was in the semi truck at the time of the accident, owned the semi truck. The semi truck was contracted to haul goods under an ICC license issued to Mayberry Trucking. Neither Kersey nor Huber were employees of Mayberry Trucking. Continental National Indemnity ("CNI") insured Mayberry Trucking.

Matteson filed suit against Kersey, Huber, and Mayberry Trucking. CNI offered its policy limits as settlement and the trial court approved the settlement. CNI paid out its policy limits of $1,000,000.00 and in exchange Matteson executed a release of all claims against Huber, Kersey, and Mayberry Trucking. The release of all claims stated:

> **MATTESON** ... pursuant to Order of the Court entered by Magistrate Houk, July 8, 2002, approving settlement of the Wrongful Death claim, for the sole consideration of the payment of the sum of **Nine Hundred Thirty Four Thousand, Two Hundred Seventy Two Dollars and Twenty Nine Cents ($934,-272.29)** (*$1,000,000.00 CNI Policy Limits minus $65,727.71 in restitution payments paid on behalf of Michael Huber to Susan Matteson, Fort Wayne Police*

---

1. Citizens filed a motion to strike the portions of Matteson's reply brief suggesting that she dismissed her lawsuit against Huber and Kersey because they had no personal assets. Citizens argues that: (1) Matteson did not advance this theory in her responses to the motions for summary judgment and cannot raise this argument on appeal; (2) Matteson cites no evidence to support her theory; and (3) Matteson's claims are contradicted by the evidence and stipulations actually designated to the trial court. Under Ind. Appellate Rule 42, we "may order stricken from any document any redundant, immaterial, impertinent, scandalous or other inappropriate matter." We hereby deny Citizens' motion to strike and note that our disposition of this case does not rely on whether Huber or Kersey had personal assets.

*Department and City of Fort Wayne pursuant to Judgment of Conviction order from Allen Superior Court, November 15, 2001* ) being paid to [Matteson] . . ., the receipt and sufficiency of which is hereby acknowledged, and pursuant to an order of approval of settlement by the Probate Court of Allen County, Indiana, do hereby individually and as Personal Representative of the Estate of Bradley W. Matteson, Deceased, on behalf of the Estate of Bradley W. Matteson, Deceased, and as Guardian and Next Friend of Alex Matteson, a Minor, release, acquit, covenant not to sue, and forever discharge **MICHAEL J. HUBER, JOSEPH K. KERSEY, MAYBERRY TRUCKING AND CONTINENTAL NATIONAL INDEMNITY COMPANY,** and their agents, servants, heirs, executors, administrators, officers, directors, stockholders, principals, employees and assigns, and all other persons, firms, corporations, associations, partnerships or other entities, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, loss of society, expenses and compensation whatsoever, on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, and any and all consequences thereof, resulting or to result from an accident, which occurred on or about the **5th day** of **October, 2000,** at or near **2200 N. Coliseum Blvd, Fort Wayne, Indiana,** including, but not limited to, any and all claims which have or could be made under the Indiana Wrongful Death Act.

Appellant's Appendix at 139. On August 7, 2002, the trial court in the separate action issued the following order for dismissal:

Plaintiffs, by counsel, and Defendants, Michael J. Huber, Joseph K. Versey and Vernon Mayberry d/b/a Mayberry Trucking, by counsel, having submitted their Stipulation of Dismissal in the above-captioned matter, with prejudice and costs paid pursuant to Trial Rule 41(A)(1)(b) of the Indiana Rules of Trial Procedure, and this Court being duly advised in the premises, now finds said stipulation proper, therefore

IT IS ORDERED that the above-captioned matter is hereby dismissed, with prejudice, costs to Plaintiff, costs paid.

*Id.* at 136.

Matteson then filed a complaint against her insurer, Citizens, on December 10, 2002, seeking payment of uninsured motorist insurance coverage for the accident. The policy provides express uninsured motorist coverage in the amount of "$500,-000.00 each person / $500,000.00 each occurrence." *Id.* at 94.

On June 5, 2003, Matteson filed a motion for summary judgment. On August 1, 2003, Citizens filed a motion for summary judgment. The trial court denied both motions for summary judgment.

On January 25, 2005, the parties stipulated certain facts and filed a joint motion requesting the trial court to decide the issue of whether Matteson had "coverage under the 'uninsured motorists coverage' provisions" of her policy with Citizens. *Id.* at 94. On February 2, 2005, Citizens filed a "re-filed" motion for summary judgment. Appellant's Appendix at 3; Appellee's Appendix at 1. The trial court held a hearing on the parties' joint motion for the trial court to decide issues of insurance coverage and Citizens' "re-filed" motion for summary judgment. On July 7, 2005, the trial court issued the following order:

\* \* \* \* \* \*

2. The parties Joint Motion for Court to Decide Issues of Insurance Cover-

age is granted and the Court determines that:

(a) The offer and payment by Continental National Indemnity (CNI) of its limits of liability insurance, $1,000,000.00, in exchange for a release signed by [Matteson] of all claims of [Matteson] against Mayberry Trucking, Michael J. Huber, and Joseph Kersey constituted "insurance coverage" of Huber and Kersey under Indiana law and fully satisfied the minimum requirements prescribed by Indiana's financial responsibility act even though the CNI policy only names Mayberry Trucking as insured and its policy declaration does not identify Huber and Kersey or the semi truck that was involved in the accident. See Ind. Code § 9-25-4.5 and *State Farm Mut. Auto Ins. Co. v. Leybman* [,] 777 N.E.2d 763 (Ind.Ct.App. 2002)[, *trans. denied* ].

(b) Considering the circumstances set forth in paragraph (a) supra and the text, including its definition of uninsured motorists, and purpose of the Indiana uninsured motorist act and the Defendant Citizen's Insurance policy definition of uninsured motor vehicles, Citizen's uninsured motorist coverage did not apply to [Matteson]'s claim. See Ind.Code § 27-7-5-4(a) and *Leybman supra* at 767.

3. There being no genuine issue of material fact and [Citizens] being entitled to judgment as a matter of law, [Citizens]'s Motion for Summary Judgment is granted.

4. It is further ordered that judgment be entered for [Citizens] and against [Matteson] on [Matteson]'s uninsured motorist claim in this cause. Costs are assessed against [Matteson]. Costs paid.

Appellant's Appendix at 17. On August 8, 2005, Matteson filed a notice of appeal.[2]

The sole issue is whether the trial court erred by granting Citizens' motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to

2. Matteson included, in the Appellant's Appendix, her motion for summary judgment, designation of evidence, and brief in support of summary judgment that she filed on June 5, 2003. Matteson also included Citizens' motion for summary judgment, designation of evidence, and brief in support of summary judgment filed on August 1, 2003. Citizens argues that "the initial denial of these competing motions for summary judgment is not the basis for the instant appeal." Appellee's Brief at 1 n. 1. We agree. Matteson's notice of appeal states, "Plaintiff, by counsel, hereby gives notice of an appeal from a final judgment of the above court being the 'Order or Judgment of the Court' dated July 7, 2005." Citizens includes its "re-filed" motion for summary judgment and brief in support of its "re-filed" motion for summary judgment in its Appellee's Appendix.

Matteson failed to include in her appendix a copy of her brief in support of the existence of uninsured motorists coverage; a copy of her reply brief to Citizens' "re-filed" motion for summary judgment; and a copy of Matteson's reply brief to Citizens' brief in response. Neither the Appellant's Appendix or the Appellee's Appendix contains Citizens' combined brief in response to Matteson's brief in support of existence of uninsured motorists coverage and Matteson's reply brief to Citizens' brief in support of its "re-filed" motion for summary judgment. We remind the parties that Ind. Appellate Rule 50(A)(2) and (3) require the appellant and appellee to include in their appendices the "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal."

judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* If there are no genuine issues of material fact, we will affirm a summary judgment on any legal theory supported by the record. *Anderson v. Horizon Homes, Inc.*, 644 N.E.2d 1281, 1289 (Ind. Ct.App.1995), *trans. denied.*

 Matteson argues that the semi truck driven by Huber was not insured and she is entitled to uninsured motorist coverage. Citizens argues that Matteson is not entitled to uninsured motorist coverage because the semi truck was not an uninsured vehicle. "[T]o recover on an uninsured motorist claim, the insured must prove that there is no policy applicable to the vehicle driven by the tortfeasor." *Michael v. Wolfe*, 737 N.E.2d 820, 823 (Ind.Ct.App.2000). "[A]n insured may also establish a prima facie case by showing that he has made reasonable efforts to determine whether an applicable insurance policy exists and these efforts have been fruitless. Once the insured has met that

burden, the burden shifts to the insurer to show that there is an applicable policy." *Id.* at 824.

 This issue calls upon us to interpret Indiana's uninsured motorists statutes and Matteson's insurance policy with Citizens. A contract for insurance is subject to the same rules of interpretation as other contracts. *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537–538 (Ind.1997). Thus, if the language in the insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* at 538. However, if the language of the policy is ambiguous, we may apply the rules of construction in interpreting the language. *Id.*

 When an insurance policy contains an ambiguity, it should be strictly construed against the insurance company. *Id.* "This is especially true where the policy language in question concerns an exclusion clause." *Id.* When an insurance company fails to clearly exclude "that which the insured attempted to protect against, we must construe the ambiguous policy to further the policy's basic purpose of indemnity." *Id.* A policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." *Id.*

 We first turn to the Uninsured Motorist ("UIM") Statute. "[L]ike all statutes relating to insurance or insurance policies, uninsured/underinsured motorist statutes are to be read in a light most favorable to the insured." *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 459 (Ind.1999). "The purpose of the UIM Statute has repeatedly informed Indiana appellate court interpretation of automobile insurance contracts." *State Farm Auto. Ins. Co. v. Leybman*, 777 N.E.2d 763, 766 (Ind.Ct.App.2002) (relying on *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 540 (Ind.2002)), *trans. denied.* The purpose of the UIM statute is "to give the insured the

recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance." *Corr*, 767 N.E.2d at 540.

The provisions of the UIM statute "are to be considered a part of every automobile liability policy the same as if written therein." *DePrizio*, 705 N.E.2d at 460 (internal citation omitted). The UIM statute defines an "uninsured motor vehicle" as follows:

> For the purpose of this chapter, the term uninsured motor vehicle, subject to the terms and conditions of such coverage, means a motor vehicle without liability insurance or a motor vehicle not otherwise in compliance with the financial responsibility requirements of IC 9–25 or any similar requirements applicable under the law of another state, and includes an insured motor vehicle where the liability insurer of the vehicle is unable to make payment with respect to the legal liability of its insured within the limits specified in IC 9–25–4–5 because of insolvency.

Ind.Code § 27–7–5–4(a) (2004). Ind.Code § 9–25–4–5 (2004) provides that the "minimum amount[ ] of financial responsibility" is "twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual."

The Citizens insurance contract revealed: "[Citizens] will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an ... 'uninsured motor vehicle' ... sustained by an 'insured' ... and caused by an accident." Appellant's Appendix at 116. The policy revealed the following definition of an uninsured motor vehicle:

> E. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
> 1. To which no liability bond or policy applies at the time of the accident.

*Id.* at 117. We have previously held that this language is clear and unambiguous. *See, e.g., Greenfield v. Allstate Personal Property*, 806 N.E.2d 856, 860 (Ind.Ct.App. 2004) (holding that the language that an uninsured motor vehicle is a "motor vehicle without liability insurance" is clear and unambiguous), *reh'g denied, trans. denied.*

We find *State Farm Auto. Ins. Co. v. Leybman*, 777 N.E.2d 763 (Ind.Ct.App. 2002), instructive. In *Leybman*, James Gaddy was driving a vehicle owned by his father, John Gaddy, without his father's permission. *Leybman*, 777 N.E.2d at 764. James struck and killed a young man. *Id.* Although James did not have insurance, John maintained insurance on the vehicle through GRE Insurance Company ("GRE"). *Id.* The policy did not list James as an insured driver. *Id.* In addition, the GRE policy provided coverage for the permissive use of the vehicle but not for any nonpermissive use of the vehicle. *Id.* GRE offered the policy limits of $25,000 to the Leybmans to settle the case. *Id.* The settlement was contingent on the Leybmans executing a release of liability of both John and James. *Id.* GRE's offer had not been withdrawn or accepted when the Leybmans filed a declaratory judgment action against their insurer, State Farm, requesting the $50,000 limits of their policy's uninsured motorist provision. *Id.* The trial court concluded that GRE's settlement offer to pay John's policy limits of $25,000 did not constitute insurance coverage for the "ownership, maintenance or use" of the vehicle at the time of the accident. *Id.*

On appeal, we held:

> Through GRE's offer of the $25,000 policy limits, James Gaddy can be made to respond to the damages resulting from the accident. *See DePrizio*, 705 N.E.2d at 459. This offer of the policy limits satisfies the minimum requirements pre-

scribed by the financial responsibility act. The insurer's offer of the policy limits, as a result, constituted coverage of the accident. Because insurance was available for the offending party's act, there was no need for resort to the Leybman's uninsured motorist policy. *Id.* at 766.

Matteson argues that *Leybman* is distinguishable because under the GRE policy the vehicle itself was insured and here "there is *no* insurance coverage on the *vehicle* itself."[3] Appellant's Brief at 15. Matteson concedes that the CNI policy insured Mayberry Trucking but argues that the CNI policy did not "name the 1996 Red Freightliner semi truck, License No. IRM541, Vin # 1UYDXYB4TH623321 as an insured *vehicle* under the policy," "name the owner Kersey as an insured under the policy," or "the driver Huber as an insured under the policy." *Id.* at 6–7.

In *Leybman*, we held that "[t]he insurer's offer of the policy limits, as a result, constituted coverage of the accident. Because insurance was available for the offending party's act, there was no need for resort to the Leybman's uninsured motorist policy." *Leybman*, 777 N.E.2d at 766. Here, Mayberry Trucking carried insurance with CNI. The CNI policy stated, "[IN] RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE [AG]REE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY." Appellant's Appendix at 128. The joint motion stipulated the following fact, "Mayberry Trucking was insured by Continental National Indemnity (CNI) ...." The joint motion also stipulated that "CNI paid out its policy limits of $1,000,000." *Id.* at 95. Even though the CNI policy did not specifically list the vehicle, Kersey, or Huber, the fact that CNI paid out its policy limits to Matteson indicates that the vehicle was insured and the purpose of the UMI statute had been met. *See Leybman*, 777 N.E.2d at 766 (holding that the insurer's offer of the policy limits constitutes insurance coverage); *cf. Greenfield*, 806 N.E.2d at 860 (holding that insurance policy did not provide liability insurance for an uninsured motorist operating an insured motor vehicle).

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Citizens.

Affirmed.

RILEY, J. and BARNES, J. concur.

---

**3.** Matteson argues that *Leybman* is distinguishable because *Leybman* did not involve a motor carrier and its liability as a matter of Indiana law for use of its Interstate Commerce Commission ("ICC") license. Matteson relies on *Rediehs Exp., Inc. v. Maple*, 491 N.E.2d 1006, 1012 (Ind.Ct.App.1986), *reh'g denied, trans. denied, cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987), for this proposition. In *Rediehs*, this court addressed the liability of "carrier-lessees ... where the owner-driver lessor, while operating within the lease, is involved in a wreck while pursuing business of his own." *Rediehs*, 491 N.E.2d at 1009. In *Rediehs*, we relied on 49 C.F.R. Sec. 1057 (1982) and 49 U.S.C. 11107 (1982). *Id.* at 1010–1011. We concluded that "[t]he ICC regulation, therefore, makes the carrier responsible for the lessor's conduct, which includes financial ability, insurance coverage, safety of equipment, and competence of drivers." *Id.* at 1012. The current Code of Federal Regulations does not contain 49 C.F.R. Sec. 1057, and the current United States Code does not contain 49 U.S.C. 11107. Matteson does not reference any current regulations or statutes. Thus, Matteson has failed to develop a cogent argument and has waived this argument on appeal. *See, e.g., Davenport v. State*, 734 N.E.2d 622, 623–624 (Ind.Ct.App.2000), *trans. denied.*