

FILED

Oct 10 2018, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Margaret M. Christensen
Karl L. Mulvaney
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Ann Marie Waldron
Indianapolis, Indiana

Michael E. Simmons
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Progressive Southeastern
Insurance Co.,

*Appellant-Plaintiff,*

v.

Gregory Smith, *et al.*,

*Appellee-Defendant.*

October 10, 2018

Court of Appeals Case No.
18A-PL-312

Appeal from the Marion Superior
Court

The Honorable Timothy Oakes,
Judge

Trial Court Cause No.
49D02-1701-PL-2865

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Progressive Southeastern Insurance Co. (Progressive), appeals the trial court's summary judgment in favor of Appellees-Defendants, Gregory Smith (Smith), Nolan Clayton (Clayton), Erie Insurance Group, Brackett Restaurant Group LLC d/b/a Stacked Pickle, and Allstate Insurance Company (Allstate), on Progressive's Complaint for Declaratory Judgment requesting a determination that, according to the terms of its insurance policy with Smith, Smith was not entitled to coverage under the policy's uninsured-motorist provisions for injuries sustained during an accident while being a passenger in his vehicle.[1]

We reverse.

# ISSUE

Progressive presents two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred by concluding that Smith is entitled to receive payment from Progressive for his bodily injury under his insurance policy's uninsured motorist (UM) coverage, where his injury arose from a single-vehicle accident involving his insured vehicle and the driver's liability insurance covered Smith's bodily injury damages.

---

[1] We held oral argument in this cause on September 13, 2018 in the Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel for their insightful advocacy.

# FACTS AND PROCEDURAL HISTORY

[4] On February 18, 2016, Smith and Clayton attended a company event in Marion County, Indiana. They left the event together and Smith gave Clayton permission to drive Smith's pick-up truck. Clayton lost control over the vehicle and ran into a tree, seriously injuring Smith. No other vehicles were involved in the accident.

[5] At the time of the incident, Progressive insured Smith under a policy which provided coverage for liability, medical payments, UM coverage, coverage for damage to the insured's vehicle, and roadside-assistance coverage. Accordingly, Progressive paid Smith's vehicular damages in the amount of $10,937.71 and the medical payments coverage limits of $5,000. Smith also brought a negligence claim against Clayton, who was insured by Allstate. Allstate eventually settled out of court with Smith.

[6] On January 19, 2017, Progressive filed its Complaint for Declaratory Judgment against Smith, requesting a determination that, according to the terms of his insurance policy, Smith was not entitled to coverage under the policy's UM provisions or bodily injury provisions for injuries sustained in an accident in his truck and that Progressive was not required to defend or indemnify Clayton, as a permissive driver of the truck.

[7] On April 27, 2017, Smith submitted a motion for summary judgment and designation of evidence, seeking damages for bodily injury under the policy's UM coverage. In his motion, Smith argued that, even though his truck was

covered under the policy, it was an uninsured motor vehicle pursuant to the provisions of the policy. On May 23, 2017, Progressive filed its response to Smith's motion and filed its own motion for summary judgment with designation of evidence, arguing that Smith was not entitled to UM coverage under the policy. On December 14, 2017, without a hearing, the trial court signed Smith's proposed findings and summarily granted judgment to him and against Progressive. On January 16, 2018, Progressive filed its motion to correct error, which the trial court denied the following day.

[8] Progressive now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[9] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins.*

*Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

[10] We observe that, in the present case, the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id*

[11] Construction of the terms of a written contract is a pure question of law for the court, reviewed *de novo*. *State Farm Mut. Auto Ins. Co. v. Leybman*, 777 N.E.2d 763, 765 (Ind. Ct. App. 2002), *trans. denied*. Provisions of insurance contracts are subject to the same rules of construction as other contracts; we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004), *reh'g denied, trans. denied*. In accomplishing this goal, we must construe the insurance policy as a whole, rather than considering

individual words, phrases or paragraphs. *Id*. "Although some 'special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds, if a contract is clear and unambiguous, the language therein must be given its plain meaning.'" *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). As a result, "[p]olicy terms are interpreted from the perspective of an ordinary policyholder of average intelligence," and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000). "'Where there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000) (quoting *Am. States Ins. Co. v. Kiger*, 663 N.E.2d 945, 947 (Ind. 1996)). "When construing the meaning of an insurance policy, "'an ambiguity is not affirmatively established simply because a controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party.'" *Id*. (quoting *Auto. Underwriters, Inc. v. Hitch*, 349 N.E.2d 271, 275 (Ind. 1976)). One way of determining whether reasonable persons might differ is to see if the policy language is susceptible to more than one interpretation. *Westfield Cos.*, 804 N.E.2d at 1274.

## II. *Analysis*

[12] Progressive contends that the trial court erred in issuing summary judgment in favor of Smith because Smith's vehicle was not an uninsured motor vehicle as defined under the UM coverage of the policy and Smith's bodily injuries were

covered by Clayton's liability insurer. Progressive posits that because Smith's Progressive policy covered damages to Smith's truck and his medical payments and Clayton's insurer tendered its full policy limits to Smith to answer for the damages Clayton caused, Smith cannot recover under an uninsured motorist claim as coverage is available to him.

[13] Indiana law defines an 'uninsured motor vehicle' as 'a motor vehicle without liability insurance' or otherwise not in compliance with the financial responsibility requirements of Indiana law. Ind. Code § 27-7-5-4(a). Thus, "to recover on an uninsured motorist claim, the insured must prove that there is no policy applicable to the vehicle driven by the tortfeasor." *Matteson v. Citizens Ins. Co. of Am.*, 844 N.E.2d 188, 192 (Ind. Ct. App. 2006). The purpose of Indiana's statutory requirement that insurers make UM coverage available is to ensure that "every *insured*—within the definition of that term in the policy—[is] entitled to recover uninsured motorist benefits for the damages he/she would have recovered from the offending motorist if that person had maintained a policy of liability insurance." *Ind. Lumbermens Mut. Ins. Co. v. Vincel*, 452 N.E.2d 418, 426 (Ind. Ct. App. 1983). In other words, "[t]he purpose of the Financial Responsibility Act is to assure a source of compensation for victims harmed by the negligent operation of motor vehicles." *Northern Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 182 (Ind. 2006).

[14] Part III of Progressive's policy, which provides the UM coverage, specifies in pertinent part:

PART III – UNINSURED/UNDERINSURED MOTORIST
COVERAGE

INSURING AGREEMENT –
UNINSURED/UNDERINSURED MOTORIST BODILY
INJURY COVERAGE

If **you** pay the premium for this coverage, **we** will pay for
damages that an **insured person** is legally entitled to recover from
the owner or operator of an **uninsured motor vehicle** or
**underinsured motor vehicle** because of **bodily injury**:

Sustained by an **insured person**;

Caused by an accident; and

Arising out of the ownership, maintenance or use of an
**uninsured motor vehicle** or **underinsured motor vehicle**.

* * * *

An "**uninsured motor vehicle**" does not include any vehicle or
equipment:
 a. owned by **you**, a **relative**, or a **rated resident** or furnished or
 available for the regular use of **you**, a **relative**, or a **rated resident**;
 [or]

 * * * *

 g. that is a **covered auto**

(Appellant's App. Vol. III, pp. 109-11).

Accordingly, the unambiguous language of the policy does not extend UM coverage to Smith's bodily injuries sustained in an accident caused by his own truck because Smith's truck is a covered auto as defined by the policy, and thus not included in the uninsured motor vehicle definition which would trigger coverage of the policy. In other words, no vehicle that Smith owns or insures can ever be an "uninsured motor vehicle" for UM coverage purpose. "[A]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Empire Fire v. Frierson*, 49 N.E.3d 1075, 1079 (Ind. Ct. App. 2016). Insurance companies are free to limit their liability in a manner not inconsistent with public policy as reflected by case or statutory law. *Evans v. Nat'l Life Acc. Ins. Co.*, 467 N.E.2d 1216, 1219 (Ind. Ct. App. 1984), *reh'g denied*.

If a plainly expressed insurance policy is not contrary to public policy, it is entitled to construction and enforcement as expressed. *Id*. Our interpretation today is consistent with this court's interpretation of similar policy provisions excluding from the scope of UM coverage vehicles owned by the insured and not identified in the policy. *See, e.g., Jones v. State Farm Mut. Ins. Co.*, 635 N.E.2d 200, 202 (Ind. Ct. App. 1994) (rejecting a claim for underinsured motorist coverage where the policy at issue precluded the insured vehicle from the definition of "underinsured motor vehicle"), *trans. denied*. It is also consistent with the Indiana Financial Responsibility Act which requires car owners to purchase liability insurance for injuries sustained by others, but does

not require such insurance for personal injury sustained by the owner himself. *See Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1098 (Ind. 1985).

[17] Smith now attempts to insert an ambiguity in the policy by referring to exclusion 1.b of Progressive's UM coverage, which provides

> EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.
>
> Coverage under this Part III will not apply:
>
> To bodily injury sustained by any person while using or occupying:
>
> * * * *
>
> A motor vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III.

(Appellant's App. Vol. III, pp. 109-11). Smith maintains that by exempting the covered auto from the exclusion of the UM coverage, his injuries should fall within the scope of coverage. However, "[a]n exception to an exclusion cannot create coverage where none exists. Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause." *Hartford Cas. Ins. Co. v. Evansville Vanderburgh Pub. Library*, 860 N.E.2d 636, 646 (Ind. Ct. App. 2007), *trans. denied*.

[18]     In a similar effort to trigger the UM coverage of Progressive's policy, Smith claims that Progressive denied payment for Smith's injuries under the liability coverage portion of the policy and thus rendered his claim subject to the UM coverage of the policy. Specifically, Smith points to correspondence between Smith's counsel's office and a Progressive claims adjuster. On June 30, 2016, Smith's counsel's office contacted Progressive's claim adjuster, asking

> Thanks for your assistance in this matter thus far – I have been unable to confirm fax/and or email addresses for the liability adjuster. Could you confirm their contact information? I need to provide them with a copy of the suit filed as well as all medical bills now in our possession.

(Appellant's App. Vol. II, p. 150). That same day, Progressive's claims adjuster replied:

> To my knowledge, there is no bodily injury on this claim as it is a single vehicle accident. There is $5,000.00 of medical payments available and once that is exhausted health insurance will pick up. The file owner is [] and she handled the collision portion.

(Appellant's App. Vol. II, p. 150). The following day, July 1, 2016, Smith's counsel's office responded, in part:

> It is our understanding that Progressive has not opened a bodily injury or uninsured/underinsured motorist claim in this matter, despite our request that one be established. We respect that this is Progressive' [sic] position and request that the appropriate adjuster confirm receipt of the above documents. To date, we have been unable to establish fax and/or email contact with the

appropriate party and we would request that this information be forwarded to appropriate party within Progressive.

(Appellant's App. Vol. II, p. 149). Within an hour, Progressive replied with the requested contact information.

[19] Based on this correspondence, coupled with the filing of the Complaint for Declaratory Judgment, Smith observes that it "clearly evidences Progressive's denial of coverage for the bodily injury claims of Smith[.]" (Smith's Br. p. 18). Added to this, Smith claims that Progressive stipulated to its denial of coverage during a hearing on a motion for protective order on September 9, 2017.

[20] While we agree with Smith that "a tortfeasor vehicle that had its coverage denied is an uninsured motorist vehicle for the purpose of the Financial Responsibility Act," at no point did Progressive concede that Smith had submitted a claim that was denied. *Indiana Ins. Guar. Assoc. v. Smith*, 82 N.E.3d 383, 385 (Ind. Ct. App. 2017). The correspondence relied upon by Smith to support his argument merely demonstrates that Progressive's claims adjuster stated Progressive's position that the policy does not provide bodily injury coverage because it was a single vehicle accident. Instead of denying coverage, Progressive applied the policy and paid Smith $5,000 in medical payment, and also covered the repair of his truck under the collision provisions of the policy.

[21] Moreover, recent case law confirms that UM coverage is not triggered when statutorily-required liability insurance coverage is available. In both *State Farm Auto. Ins. Co. v. Leybman*, 777 N.E.2d 763, 764 (Ind. Ct. App. 2002), *trans. denied*

and *Matteson v. Citizens Ins. Co. of America*, 844 N.E.2d 188, 194 (Ind. Ct. App. 2006), this court concluded that UM coverage is not triggered when another policy is available to pay the policy limits.

[22] In *State Farm Auto. Ins. Co. v. Leybman*, 777 N.E.2d 763, 764 (Ind. Ct. App. 2002), *trans. denied*, James Gaddy was driving a vehicle owned by his father, John Gaddy, without his father's permission. Although James did not have insurance, John maintained insurance on the vehicle through GRE Insurance Company (GRE). *Id*. The policy did not list James as an insured driver. *Id*. In addition, the GRE policy provided coverage for the permissive use of the vehicle but not for any nonpermissive use. *Id*. GRE offered the policy limits to the Leybmans to settle the case. *Id*. The settlement was contingent on the Leybmans executing a release of liability of both John and James. *Id*. GRE's offer had not been withdrawn or accepted when the Leybmans filed a declaratory judgment action against their insurer, State Farm, requesting the $50,000 limits of their policy's uninsured motorist provision. *Id*. The trial court concluded that GRE's settlement offer to pay John's policy limits of $25,000 did not constitute insurance coverage for the "ownership, maintenance or use" of the vehicle at the time of the accident. *Id*. On appeal, we held

> Through GRE's offer of $25,000 policy limits, James Gaddy, can be made to respond to the damages resulting from the accident. This offer of the policy limits satisfies the minimum requirements prescribed by the [F]inancial [R]esponsibility [A]ct. The insurer's offer of the policy limits, as a result, constituted coverage of the accident. Because insurance was available for the

offending party's act, there was no need to resort to Leybman's uninsured motorist policy.

*Id*. at 766.

[23] In *Matteson v. Citizens Ins. Co. of America*, 844 N.E.2d 188, 194 (Ind. Ct. App. 2006), Matteson's husband collided with a semi-truck and a policy provided by the commercial carrier did not name the specific truck or driver under the policy. Matteson sought UM coverage under her own policy and attempted to distinguish *Leybman* on the ground that *Leybman's* policy insured the specific vehicle driven by the tortfeasor. *Id*. This court disagreed, noting "even though the [insurance] policy did not specifically list the vehicle, [its owner, or the driver], the fact that [the insurance company] paid out its policy limits to Matteson indicates that the vehicle was insured and the purpose of the [UM] statute had been met." *Id*.

[24] Likewise here, Smith's policy covered damages to Smith's truck and his medical payments and Clayton's insurer tendered its full policy limits to Smith to answer for the damages Clayton caused. Accordingly, in line with *Leybman* and *Matteson*, as the policy limits satisfy the minimum requirements of the Financial Responsibility Act, coverage was available and Smith cannot claim under the UM provisions of his policy.

[25] Accordingly, as Progressive's policy unambiguously excluded Smith's truck from UM coverage and the policy reimbursed Smith for the damage to his vehicle and his medical payments pursuant to the policy's requirements, the

trial court incorrectly applied the law to the facts. *See First Farmers Bank & Trust Co.*, 891 N.E.2d at 607. Therefore, we reverse the trial court's grant of summary judgment in favor of Smith.

# CONCLUSION

Based on the foregoing, we hold that the trial court erred by concluding that Smith is entitled to receive payment from Progressive for his bodily injury under his insurance policy's UM coverage, where his injury arose from a single-vehicle accident involving his insured vehicle and the driver's liability insurance covered Smith's bodily injury damages.

Reversed.

Vaidik, C. J. and Kirsch, J. concur